FORBY v. FULK, JUDGE.

4536                                    214 S. W. 2d 920

Opinion delivered November 22, 1948.

*Walter M. Purvis* and *Robinson & Park,* for appellant.

*Guy E. Williams,* Attorney General, *Oscar E. Ellis,* Assistant Attorney General, *Edwin E. Dunaway* and *Tom Downie,* for appellee.

HOLT, J. March 28, 1948, Billy E. Forby was, by information, charged with the crime of rape. On the same date, the Hon. Gus Fulk, Judge of the Pulaski Circuit Court, First Division, committed Forby to the Arkansas State Hospital for Nervous Diseases for a mental examination, in accordance with the provisions of Initiated Act 3, adopted by the people at the General Election in 1936, appearing as §§ 3913 *et seq.,* Pope's Digest.

On April 20, 1948, the superintendent of the State Hospital, Dr. Jackson, and the assistant superintendent, Dr. Oscar Kozberg, reported to the court: "DIAGNOSIS: Without psychosis, mental deficiency—mental age 12 years. (1) It is our opinion that Billy E. Forby was sane and legally responsible for his acts at the time of their alleged commission. (2) It is further our opinion that Billy E. Forby is sane and legally responsible for his acts at the time of this mental examination and that he is capable of carrying out anything necessary in his defense."

Therefore, on May 21, 1948, notwithstanding the above report, Forby petitioned the court to grant him a jury trial, as provided in § 3881 of Pope's Digest, to determine the issue as to his sanity, alleging that he was then insane. The trial court granted the petition and on June 1, 1948, the jury returned the following ver-

dict: "We, the jury, find the petitioner, Billy E. Forby, of unsound mind." Thereafter, on the next day (June 2nd) the trial court committed Forby to the Arkansas State Hospital to remain for an indeterminate period of time or until found sane.

On July 22, 1948, Dr. Jackson made the following report to Judge Fulk: "Billy E. Forby was returned to this institution June 2, 1948, and has remained under observation in this hospital to the present date. This man has been observed by the members of the State Hospital medical staff, as well as two consultant psychiatrists. The unanimous opinion of the staff physicians is as follows:: 1. That Billy E. Forby is at the present time sane and mentally competent. 2. That Billy E. Forby was mentally competent at the time of the alleged offense. 3. That Billy E. Forby is mentally capable of cooperating and aiding in his defense."

Following this report, Dr. Jackson delivered Forby to the Sheriff of Pulaski County who placed him in the Pulaski County jail (§§ 11 and 12, Act 241 of the Acts of 1943).

September 24, 1948, Forby petitioned for a second separate sanity trial before a jury and alleged that "the court is without jurisdiction to try the defendant on the issue of his guilt or innocence of the charge, until such time as the jury has found him to be sane."

This petition was denied by the court and the charge against Forby was set for trail on October 18, 1948.

On September 25, 1948, defendant, Forby, filed in this court "Petition for Writ of Prohibition," in which he prayed "that the First Division Circuit Court of Pulaski County, Arkansas, be prohibited and restrained from trying said case on the issue of the guilt or innocence of the defendant on the charge named in the indictment, until such time as a jury has been empaneled and the issue of the defendant's present insanity has been submitted to such jury and the defendant has been declared to be of sound mind by said jury."

Petitioner, Forby, says: "As we see it, there are two issues before the court at this time—First: Is pro-

hibition a proper remedy under the facts and circumstances in this case? Second: If prohibition is a proper remedy, are the facts and circumstances of this case such that the court will grant the writ of prohibition?''

The State, after conceding that prohibition is the proper remedy, earnestly argues, first that "§ 3881 of Pope's Digest which authorizes a separate sanity trial in such cases has been repealed by Initiated Act No. 3, of 1936,'' and second "even if § 3881 has not been repealed, the granting of another separate sanity trial under § 3881 is within the sound judicial discretion of the court.''

The question presented is of first impression here.

Since we have reached the conclusion that the State's first contention must be sustained,—that is, that Act 3 repealed § 3881 of Pope's Digest,—it becomes unnecessary to consider the State's second contention.

Section 3881 of Pope's Digest provides: ''Insanity of defendant—procedure. If the court shall be of the opinion that there are reasonable grounds to believe that the defendant is insane, all proceedings in the trial shall be postponed until the jury be impaneled to inquire whether the defendant is of unsound mind, and if the jury shall find that he is of unsound mind the court shall direct that he be kept in prison, or conveyed by the sheriff to the lunatic asylum, and there kept in custody by the officers thereof until he is restored, when he shall be returned to the sheriff, on demand, to be reconveyed by him to the jail of the county.''

Initiated Act No. 3 is entitled ''An Act to amend, modify and improve judicial procedure and the criminal law, and for other purposes,'' and contains the following provisions material here: ''Section 11. INSANITY DEFENSE. Whenever a prosecution for any crime has been instituted in the circuit court by indictment or information, and the defense of insanity at the time of the trial or at the time of the commission of the offense has been raised on behalf of the defendant and becomes an issue in the cause, or the circuit judge has reason to believe that the defense of insanity will be raised on

behalf of the defendant and will become an issue in the cause, or shall be of the opinion that there are reasonable grounds to believe that the defendant was insane at the time of the alleged commission of the offense with which he is charged, or has become insane since the alleged commissoin of such offense, the judge shall postpone all other proceedings in the cause and shall forthwith commit the defendant to the Arkansas State Hospital for Nervous Diseases, where the defendant shall remain under observation for such time as the court shall direct, not exceeding one month. The judge shall order the superintendent or supervising officer of the State Hospital to direct some competent physician or physicians employed by the State Hospital to conduct observations and investigations of the mental condition of the defendant, and to prepare a written report thereof. On issuing such order, the judge shall direct the circuit clerk to notify the prosecuting attorney and the counsel for the defendant of the issuance of the order. If the defendant is at large on bail, the court shall commit him to custody during the period and for the purposes of the examination hereinbefore provided. If the trial has already begun when the issue of insanity is raised, and the court deems it necessary for the proper administration of justice that a mistrial be declared, it shall be the duty of the judge to declare such mistrial, and then to proceed as herein provided. The action of the court in committing the defendant for examination shall not preclude the State or defendant from calling expert witnesses to testify at the trial, and such expert witnesses shall have free access to the defendant for the purposes of observation and examination during the period of his commitment to the State Hospital for examination. A written report prepared by the physician or physicians employed by the State Hospital shall indicate separately the defendant's mental condition during the period of the examination, and his probable mental condition at the time of the alleged offense. This report shall be certified by the superintendent or supervising officer of the State Hospital, under his seal, or by an affidavit duly subscribed and sworn to by him be-

fore a notary public who shall add his certificate and affix his seal thereto.''

Section 12 provides: ''Testimony of Physicians. The physician or physicians who prepared the report shall be summoned as witnesses at the trial at the order of the trial judge or at the request of either party, and if summoned shall be examined by the court and may be examined by either party, and a copy of the written report hereby required shall be given in evidence in every case in which the fact of sanity is an issue at the trial,'' and § 38 provides: ''All laws and parts of laws, either general or special, which are in conflict with this act or any part of this act, whether such laws be herein mentioned or not, are hereby repealed.''

It is conceded that § 3881, *supra,* was not expressly repealed by any provision of Act 3, *supra.* It does not necessarily follow, however, that § 3881 was not repealed by implication. As early as 41 Ark. 149, *Coats* v. *Hill et al.,* this court announced the following well established principles of law governing repeals by implication: ''Repeals by implication are not favored. To produce this result, the two acts must be upon the same subject and there must be a plain repugnancy between their provisions; in which case the latter act, without the repealing clause, operates to the extent of repugnancy, as a repeal of the first. Or, if the two acts are not in express terms repugnant, then this latter (later) act must cover the whole subject of the first and embrace new provisions, plainly showing that it was intended as a substitute for the first. *United States* v. *Tynen,* 11 Wall 88, 20 L. Ed. 153.''

In the cited case, *United States* v. *Tynen,* the Supreme Court of the United States said: ''If the latter (later) act covers the whole subject matter of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the first Act, it will operate as a repeal of that Act.'' See, also, *H. Rouw Co.* v. *Crivella,* 105 Fed. Rep. 2d 434.

We think it clearly apparent from a mere reading of § 3881 and the provisions of Act 3, *supra,* that Act 3

was intended to cover, and does cover, the whole subject of § 3881, and in addition, embraces new provisions "plainly showing that it was intended as a substitute for the first act (§ 3881)," effected its repeal by implication, and provides the procedure to be followed.

We attach significance to the fact that the compilers of "Arkansas Statutes 1947 Annotated" did not include § 3881, *supra*, as a part of our criminal procedure, but the provisions of Act 3, *supra*, are included and given as the procedure when insanity, at any stage, is pleaded. It is further significant that our decisions under § 3881 are therein referred to (page 350, Vol. 4) and listed under the heading, "Decisions Under Prior Law."

Act 3 not only provides for a determination and report by disinterested specialists, skilled in mental diseases, of the sanity of one charged with crime at the time of the trial, but also at the time of its commission. It also gives the right to either the prosecution or the defense to have the physicians who made the examination, and prepared the report, summoned as witnesses, along with additional witnesses if desired, at the trial of the accused for examination or cross-examination on the issue of sanity. (*Jones* v. *State*, 204 Ark. 61, 161 S. W. 2d 173).

The purpose of the act was not to deprive the jury selected and empaneled to determine the guilt or innocence of the defendant, from also passing on the fact question as to defendant's sanity at the time of trial or when the crime was committed, if made an issue.

Insanity at the time of trial, or when the crime was committed, may always be interposed as a defense at the time the defendant is being tried for the offense alleged. To deprive the defendant of this defense would be contrary to our constitutional provision (Art. VII, § 23) which makes juries triers of facts. The purpose of Act 3 was to furnish the jury, trying the accused for the crime charged, the assistance which the trained staff of the State Hospital would afford on the issue of sanity when raised.

As was said in *Gaines v. State*, 208 Ark. 293, 186 S. W. 2d 154, quoting from *Whittington v. State*, 197 Ark. 571, 124 S. W. 2d 8: "The purpose of the statute was to furnish a means for the examination of one who gives notice to the court that he pleads or intends to plead insanity as a defense to the crime charged, or where the court has reasonable information from some reliable source that he was insane at the time he committed the crime or had become insane since that time."

It follows, therefore, that the petition for Writ of Prohibition should be and is denied.