Burlee CARROLL, Petitioner-Appellant,

v.

Dr. George J. BETO, Director, Texas Department of Corrections, Respondent-Appellee.

No. 27887.

United States Court of Appeals,
Fifth Circuit.

Jan. 27, 1970.

Jerry L. Buchmeyer, Dallas, Tex., for petitioner-appellant; Thompson, Knight, Simmons & Bullion, Dallas, Tex., of counsel.

Crawford C. Martin, Atty. Gen. of Texas, Nola White, First Asst. Atty. Gen., Hawthorne Phillips, Executive Asst. Atty. Gen., Charles T. Rose, Allo B. Crow, Jr., Robert C. Flowers, Robert G. Darden, Asst. Atty's. Gen., Austin, Tex., for respondent-appellee.

Before WISDOM, THORNBERRY and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Burlee Carroll is serving a life sentence in the Texas prison system pursuant to his conviction in 1948, based upon his plea of guilty before a jury to the murder of his wife.

In February of 1968, the petitioner filed an application for writ of habeas corpus in the convicting Texas court. The same judge who presided at the petitioner's trial twenty-one years earlier held an extensive evidentiary hearing.

Carroll was represented by counsel and was present at the hearing. The state court found that Carroll's counsel at the time of trial were competent and effective and that Carroll was sane both at the time of the commission of the act and at the time of the trial. Following the hearing, the trial court filed written findings of fact and conclusions of law denying the writ. The Court of Criminal Appeals denied the petition without written opinion.

Petitioner then proceeded into federal district court alleging the same grounds that had been unsuccessfully asserted in the state court. The district court denied the writ of habeas corpus without an evidentiary hearing relying on what it classified as a full and fair hearing by the state court. Essentially then we are passing on the findings of fact by the state court. We reverse and remand.

The points raised by petitioner on this appeal all stem from Burlee Carroll's mental difficulties. The record as developed in the state proceedings below indicates the following facts.

The defendant, who is a Negro, is a man of "low average level of intelligence" with a tested I.Q. (in 1955) of only 90. He quit school after the third or fourth grade when he was 16 or 17 years old. He was drafted in 1943 when he was 24, placed in the U. S. Army and assigned for duty in the South Pacific. There he "had a number of outbreaks of violent behavior, when he threatened to kill officers—and he actually attacked some of them".

On October 24, 1943, he had a mental breakdown. Upon his admission to the field hospital on that day, he was diagnosed as "Schizophrenia-Recurrent." The following day, a more complete hospital report contained the diagnosis "Epilepsy, grand mal, with episodes of epileptic (furor) psychosis", with the following remarks:

"* * * Pvt. Eugene Watts * * * has known the pt. (patient) for over ten yrs., and he reports that pt. has had epileptic convulsions since his childhood. Informant has seen one when pt. fell on the sidewalk and hurt his head. He reports that pt. had foam in his mouth. The pt., he reports, will usually have headaches preceding the spell, and be violent afterwards. He has paranoid ideas about his officers believing they are trying to hurt him. * * * "

Because of his mental illness, the defendant was confined and placed in shackles in the field hospital; was then returned to Letterman General Hospital, California, and on December 20, 1943, was committed to the Darnall General Hospital, Danville, Kentucky. There a Neuropsychiatric Board recommended on January 22, 1944 that the petitioner be discharged for mental reasons. The Board found that he was suitable for home care and capable of signing commercial papers.

After his discharge, Carroll drifted aimlessly, and at one point was sentenced to six years imprisonment in Arkansas for robbery. He apparently escaped from the Arkansas prison, joined a circus, and eventually wound up in Abilene, Texas.

There he married, began drinking heavily and was in constant trouble with the law. Ultimately while in an enraged stupor he killed his wife and stepdaughter by cutting their heads off with a butcher knife.

After his conviction for this most hideous crime, Carroll was imprisoned in the Texas State Prison at Huntsville, Texas. Carroll began serving his life sentence on July 12, 1948, 24 days after the murders. After several outbreaks, the prison psychiatrist diagnosed the defendant as a "schizophrenic paranoid type" on April 9, 1949. He spent the next six years in the psychopathic ward —where from 1949–51 he received some *276 electric shock treatments*. In July of 1955, he was discharged from the psychopathic ward, but was assigned to the "segregation unit"—where he spent another four years in isolation because of his mental condition. The last psy-

chological summary in the prison records dated August 16, 1967, indicates that the defendant's mental difficulties have not ended:

"IMPRESSION: Emotionally unstable psychopathic predator with latent aggression and hostility * * *. Hedonistic and prone to creep on people if thwarted. Dull to dull normal ability. Paranoid affect."

"PROGNOSIS: Subject appears to be an unequivocal risk to society in my opinion."

It is conceded that no determination of Carroll's competency to stand trial was made at the time the plea was entered. This was the result of a remarkable set of circumstances. First, the trial was an example of "speedy trial" at its swiftest. The chronology of events was: June 18, 1948, the murders; June 21, indictment; June 23, counsel appointed; June 28, trial scheduled but postponed; July 7, entry of guilty plea, and July 12, sentence.

One of the petitioner's trial counsel admitted at the state habeas hearing that he knew something of Carroll's mental problems but that he did not know of Carroll's discharge from the Army for mental reasons. Counsel made no attempt to procure the petitioner's military records and did not attempt to advise the court that there might be some doubt as to Carroll's competence.

Most significantly the Sheriff who arrested Carroll testified at the state habeas hearing. His testimony speaks for itself.

"Q  All right. Did you know anything about Burlee having served in the Army?

A  No, sir, but I knew he had a psycho discharge.

Q  Did you call that to the attention of the prosecuting attorney, Esco Walter?

A  Actually, I don't know. I don't know about that. Burlee was scared of the chair and we was scared of the discharge. And they—they made a deal with Burlee if he wouldn't mention that discharge then we wouldn't mention that chair. If he would just take life and not mention that discharge, why,—

Q  That was the deal. When you say 'we' are you talking about that's the deal that was made with the District Attorney and Burlee?

A  Well, now, I don't know about that. I made that deal myself up there with Burlee in the jail. Now, whether the District Attorney and the County Attorney asked me to do that, or whether I took it on myself— I might have been overambitious there on myself.

Q  In other words, you were representing the State and the prosecution and discussed this with Burlee Carroll yourself?

A  It kind of looks that away now, yes, sir.

Q  And you told him—well, just what did you tell him?

A  I told him if he wouldn't mention that discharge then we wouldn't mention that chair."

■ Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), makes it clear that the conviction of an accused person who is not mentally competent to stand trial violates due process. This constitutional right cannot be waived by the incompetent—by guilty plea or otherwise—and thus it must be protected by adequate state procedures. Accordingly, as this Court held in its en banc decision in Lee v. State of Alabama, 5 Cir. 1967, 386 F.2d 97:

"* * * when a prisoner, either state or federal, seeking post-conviction relief, asserts with substantial facts to back up his allegation, that at the time of the trial he was not mentally competent to stand trial, and that there was no resolution of that precise issue before he was tried,

convicted and sentenced, the protection of the Fourteenth Amendment to the Constitution requires that such conviction and sentence be set aside unless upon adequate hearing it is shown that he was mentally competent to stand trial." (386 F.2d at 105)

■ The hearing previously held by the state court to determine the petitioner's competency to stand trial in 1948 was totally inadequate. The gist of the testimony of the lay witnesses was that Carroll was mean, that he did crazy things, but that he was sane. Such testimony proves little here. Carroll's bad, mean, crazy acts would naturally be associated with Carroll's drunkenness rather than possible insanity. In short, the alcoholism would tend to act as a mask to disguise from lay observers the nature and extent of whatever possible mental infirmity the petitioner was under.

It cannot be asserted that the petitioner was without some mental defect. Such defect was evident in 1944 when he was discharged from the Army and was evident in 1949 when he underwent electric shock treatment. The only question is to what extent the mental faculties of the petitioner were impaired. This question cannot be answered by lay witnesses who naturally attributed all abnormal behavior to Carroll's unfortunate drinking problem.

If the hearing which the petitioner received at the state level (merely ratified by the district court below) was inadequate, the threshold question of whether it is possible at this late date to determine whether the petitioner was competent to stand trial in 1948 must be settled. Lee v. Alabama, supra. Under the peculiar facts outlined above, we consider expert testimony to be essential to this determination.

■ If, on remand, the district court finds that it is not now possible to determine Carroll's competency for trial purposes in 1948, the judgment of conviction must be set aside and the case remanded to the Texas courts for a new trial. On the other hand, if the district court concludes that such a determination is now possible, a full hearing on the petitioner's competency to stand trial in 1948 must be held. We reverse and remand for a decision of the issues outlined above. Lee v. Alabama, supra.

Reversed and remanded.

THORNBERRY, Circuit Judge (concurring specially):

In a special concurrence in Lee v. Alabama, 5th Cir. 1967, 386 F.2d 97, I expressed my belief that Pate v. Robinson, 1966, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, demanded that the petitioner be released, conditioned upon the right of the state to retry him within a reasonable time. For the reasons stated in my concurrence in Lee, I respectfully submit that Pate v. Robinson, *supra*, demands that Mr. Carroll be released, conditioned on the right of the State of Texas to retry him within a reasonable time. In light of the en banc decision in *Lee*, however, I concur in the majority's disposition of the case before us.