Joseph Lester BUMGARNER, Petitioner,

v.

A. L. LOCKHART, Superintendent, Cummins Unit, Arkansas Department of Correction, Respondent.

No. PB–73–C–47.

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

Aug. 20, 1973.

Robert A. Newcomb, Legal Adviser to Inmates, Ark. Dept. of Correction, Pine Bluff, Ark., for petitioner.

Ralph C. Hamner, Jr., Deputy Atty. Gen., of Ark., Little Rock, Ark., for respondent.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

This is a habeas corpus proceeding brought by Joseph Lester Bumgarner, an inmate of the Cummins Unit of the Arkansas Department of Correction, pursuant to a 1971 judgment and sentence of the Circuit Court of Cross County, Arkansas. Petitioner was convicted of unlawful possession of burglary tools, Ark.Stats., Ann., § 41–1006, and was also convicted under the Arkansas Habitual Criminal Statute, Ark. Stats., Ann., § 43–2328. The jury fixed his punishment at imprisonment for a period of 10 years; sentence was duly pronounced and judgment entered. Petitioner did not appeal from his conviction.

On April 4, 1973, the Court appointed Mr. Robert Newcomb, Legal Adviser to Inmates of the Department, to represent petitioner. On May 30 the Court rejected a contention of respondent that petitioner had not exhausted State remedies as required by 28 U.S.C.A., § 2254(b).

The only substantial federal question raised by the petition is whether petitioner was denied due process of law when the Circuit Court failed to adjudicate the question of whether petitioner was mentally competent to stand trial in early February 1971. The question was

raised by an oral motion of trial counsel made prior to commencement of the trial and was overruled. In the course of the trial itself no question was raised as to petitioner's mental competency to be on trial or as to his sanity or insanity at the time of the commission of the alleged offense.

The case has been submitted on the pleadings, a copy of the transcript of petitioner's trial, documentary exhibits, and memorandum briefs.

The substantive offense of which petitioner was convicted was committed in November 1969 but proper evaluation of his present contention requires the Court to go back in point of time to 1953.

In October of that year petitioner was charged in the United States District Court for the Jonesboro Division of the Eastern District of Arkansas with having robbed the Bank of Wiener, Arkansas, the deposits of which were insured by the Federal Deposit Insurance Corporation.

On October 14, 1953, the late District Judge Thomas C. Trimble directed that petitioner be committed to the Medical Center for Federal Prisoners at Springfield, Missouri, for a mental examination as provided by law. That examination was conducted and resulted in a finding that petitioner was seriously deranged mentally. On January 5, 1954, Judge Trimble formally found that petitioner was mentally incompetent at the time of the commission of the alleged offense and was mentally incompetent at the time of the finding. He was ordered committed to the custody of the Attorney General until petitioner should become mentally competent to stand trial or until the charge against him should be dismissed.

Petitioner was a domiciliary of Cross County, Arkansas, and on April 12, 1954, the Probate Court of that County adjudged that petitioner was insane and committed him to the Arkansas State Hospital for Nervous Diseases at Little Rock. On April 26, 1954, Judge Trimble entered an order dismissing the federal charge.

Petitioner was confined for a time in the Arkansas State Hospital and he may have escaped therefrom. In any event, according to one of his petitions for post-conviction relief, by 1968 he was in prison in Mississippi where he claims that he was chained to a fence and shot by a guard.

By November 1969 petitioner was back in Arkansas, and on the night of November 8, 1969, he was arrested by Cross County officers after a high speed automobile chase. After petitioner was captured, the alleged burglary tools were found in the trunk of the Cadillac car that petitioner had been driving.

Petitioner was charged in the Circuit Court of Cross County with possession of the tools, and he appears also to have been charged with an offense in the adjoining County of Crittenden. In early 1970 in connection with the Crittenden County prosecution petitioner was committed to the Arkansas State Hospital for examination as provided by Section 11 of Initiated Act No. 3 of 1936, as amended by Act 237 of 1955, Ark.Stats., Ann., § 43–1301 et seq. He was found to be without psychosis.

At some stage petitioner was released on bail and did not report for trial on the date that had been set for that purpose. He later surrendered to Crittenden County authorities, and his Cross County bail was increased to $15,000.

In connection with the insanity proceedings in the Probate Court of Cross County petitioner's brother, Linuel Bumgarner, was appointed petitioner's guardian. In November 1970 the guardian filed an account with the Probate Court which was approved, and the guardianship was continued in effect.

On the basis of alleged indigency of petitioner local counsel were appointed to represent him in the Circuit Court. However, very shortly before the trial a female friend of petitioner employed Mr. George C. Howard of Chicago, Illinois, as counsel for petitioner, and Mr. How-

ard appeared in the Circuit Court for the first time when the case was called for trial on February 2, 1971.[1]

Turning now to the proceedings at the trial, the transcript reflects that when Mr. Howard made his presence known to the Court, the Circuit Judge had a good deal of hesitation about permitting him to represent petitioner due to his belated appearance. However, after some colloquy Mr. Howard was allowed to take the lead in representing the defendant. Mr. Robert Ford of Wynne, Arkansas, one of petitioner's Court appointed attorneys, was directed to remain in the case, and he did so. Before permitting Mr. Howard to participate in the case the Court specifically inquired of petitioner whether he recognized Mr. Howard as his attorney, and petitioner replied that he did.

While the Court, counsel, and petitioner were in chambers and before the jury was empaneled, Mr. Howard referred to the 1954 adjudication of insanity and the continuation of that adjudication in 1970 and moved orally for a preliminary determination of petitioner's mental competency to stand trial. That motion was overruled for two reasons: First, that the Circuit Court considered the motion untimely; Second, that the State Hospital staff as a result of the Act 3 examination which has been mentioned had found that petitioner was without psychosis.

Although counsel for petitioner raised orally the mental competency of petitioner to stand trial, he stated to the Court:

". . . I am not suggesting, if the Court please, that insanity will be used as a defense in this case. I am merely suggesting that it would prob-

ably be incumbent upon the Court to have the question solved prior to going to trial because he was adjudicated insane in a certain period without having been restored. I think that that order, the previous order of the Court, would continue until such time as that has been done."

After some further discussion about the Probate Court adjudication, the Court said:

"Well, that is a civil procedure, and has nothing to do with this trial and if you want to raise the question of insanity, you may do so."

The record indicates that the Prosecuting Attorney had anticipated that the "defense of insanity"[2] would be invoked by petitioner, and had arranged for a member of the State Hospital staff to be present to testify should the question of insanity come up in the course of the trial.

Immediately after the Circuit Court overruled the motion just mentioned, it took up a motion to suppress evidence that had been filed on petitioner's behalf. That motion was discussed in chambers and petitioner took some slight part in the discussion. An in chambers hearing on the motion to suppress was then conducted, and the motion was denied. Another motion, based on alleged adverse publicity, was likewise made and denied.

After the jury had been selected, counsel were requested to call their witnesses forward so that they might be taken to the witness room there to remain until called to the stand. The State identified five witnesses, and the Prosecuting Attorney stated that in addition to those witnesses he might call

---

1. Many of the factual statements that the Court has just made are based on allegations appearing in a petition for a writ of error coram nobis which petitioner seems to have tendered to the Circuit Court in 1971 after his conviction. Others of those statements are based on exhibits attached to a motion to vacate sentence which petitioner submitted to the Circuit Court in 1972 as provided by Criminal Procedure Rule 1 of the Supreme Court of Arkansas. Both of those applications for post-conviction relief appear to have been prepared by petitioner personally.

2. The term "defense of insanity" as herein used means insanity at the time of the commission of the offense, not mental incompetency to stand trial.

Dr. Charles B. Taylor on rebuttal. Dr. Taylor obviously was the member of the State Hospital staff who would be expected to rebut any evidence that petitioner might offer to the effect that he was insane at the time of the commission of the alleged offense or that he was insane at the time of trial.

The trial then proceeded to conclusion. The defendant did not testify, and no effort was made to introduce in evidence the 1954 and 1970 orders of the Probate Court. Nor was Dr. Taylor called to the stand. Thus, the jury heard no evidence whatever with respect to petitioner's mental condition at any time.

As indicated, petitioner was found guilty, and he did not appeal from his conviction to the Supreme Court of Arkansas. Mr. Howard's connection with the case apparently terminated with the trial.

### I.

There is little dispute about the underlying legal principles that govern the disposition of this case.

 Legal insanity at the time of the commission of a given act is a complete defense to a criminal charge growing out of the commission of the act. Whether a person was sane or insane within the meaning of the criminal law when he committed the act that formed the basis of the charge against him is a question of fact to be decided by the jury, and the jury's decision, if supported by substantial evidence, is ordinarily final.

 The question of whether a person is mentally competent to stand trial is a question entirely separate and distinct from the question of whether he was insane at the time he committed the act charged against him. To put a person to trial on a criminal charge if he is not mentally competent to stand trial, is a violation of due process of law, and the question of whether a given defendant was or was not mentally competent to stand trial may be raised in a habeas corpus proceeding. Pate v. Robinson,

1966, 383 U.S. 375, 86 S.Ct. 836, 15 L. Ed.2d 815; Bishop v. United States, 1956, 350 U.S. 961, 76 S.Ct. 440, 100 L. Ed. 835. And the States are required to provide procedures whereby a defendant's competency to stand trial may be determined. Pate v. Robinson, supra, 383 U.S. at 378, 86 S.Ct. 836.

 The standards for determining whether a person is competent to stand trial are different from those applied in determining whether he was sane or insane when he committed the offense charged. Generally speaking, a person is competent to stand trial if he possesses the mental ability to comprehend intelligently the nature of the proceedings in which he is involved and to consult with his attorney about the case and assist in his own defense. Dusky v. United States, 1960, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824.

 If the circumstances of a case are such as to require a hearing on the question of a defendant's competency to stand trial, a hearing must be held, and the trial Judge is not free to resolve the question without a hearing simply on the basis of his own observations of the defendant in the course of the trial. Pate v. Robinson, supra, 383 U.S. at 386, 86 S.Ct. 836.

 A "waiver" is the voluntary relinquishment of a known right, and a valid waiver presupposes the existence of mental capacity to waive. A contention that a defendant has waived the issue of his mental competency to stand trial involves a contradiction in terms, and, in effect, begs the question. Pate v. Robinson, supra, 383 U.S. at 384, 86 S.Ct. 836; Taylor v. United States, 8 Cir., 1960, 282 F.2d 16. As stated in *Taylor,* 282 F.2d at 23: ". . . if one is mentally incompetent, then, by definition, he cannot be expected to raise that contention before the trial court and thus cannot be prejudiced by his failure to do so."

### II.

A substantial federal question arising in the course of a criminal trial in the

courts of a State may be obscured by local characterization of certain issues and by State procedural requirements as to how and when certain questions are to be raised. See e. g. Henry v. Mississippi, 1965, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408. And the Court thinks that there may well have been such an obscurement in this case.

■ A defendant in a criminal case is ordinarily presumed to have been sane at the time of the commission of the alleged offense and is also ordinarily presumed to be mentally competent to stand trial. However, when a defendant's mental condition or competency actually becomes an issue in the case the authorities are almost equally divided on the questions of where the burden of proof lies and on the quantum of proof required on the issue of insanity or mental competency. See the cases collected in the extensive annotation appearing in 17 A.L.R.3d 146 et seq., following the text of the opinion in Bradford v. State, 1964, 234 Md. 505, 200 A.2d 150, 17 A.L.R.3d 134.

In Davis v. United States, 1895, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499, a case which happened to have been tried in the United States Circuit Court for the Western District of Arkansas, the Supreme Court held that once insanity becomes an issue, the burden is on the prosecution to establish the sanity of the defendant by evidence and beyond a reasonable doubt. The federal courts and the courts of more than 20 States follow the rule laid down in *Davis*.

On the other hand, more than 20 States take the position that mental incompetency is an affirmative defense, and that the burden of proving its existence by a preponderance of the evidence or to the satisfaction of the jury is upon the defendant. And Arkansas seems to be one of the jurisdictions wherein that view prevails. Hill v. State, 1970, 249 Ark. 42, 458 S.W.2d 45; Kelley v. State, 1922, 154 Ark. 246, 242 S.W.2d 572; Bell v. State, 1915, 120 Ark. 530, 180 S. W. 186. But see, Bailey v. State, 1912, 105 Ark. 228, 150 S.W. 1030, and Hotz, "The Burden of Proof of Insanity as a Defense in Arkansas," 1966, 20 Ark. Law Review 121.

■ The Supreme Court of Arkansas seems never to have considered in criminal context whether and to what extent an adjudication of insanity has a continuing effect. The general rule, however, is that such an adjudication creates a rebuttable presumption of continuing insanity or mental incompetency. See annotation appearing in 27 A.L.R.2d 121 et seq., following text of the opinion in State v. Garver, 1950, 190 Or. 291, 225 P.2d 771, 27 A.L.R.2d 105; Hurt v. United States, 8 Cir., 1964, 327 F.2d 978; Byrd v. Pescor, 8 Cir., 1947, 163 F.2d 775; Ashley v. Pescor, 8 Cir., 1945, 147 F.2d 318. There is no reason to believe that Arkansas would not apply that general rule.

Arkansas has always recognized a difference between incompetency to stand trial and insanity at the time of the commission of an offense. And for many years if a question arose in Arkansas as to the competency of a defendant to stand trial, that question was resolved by an *in limine* hearing before a specially empaneled jury.

The section of the old Arkansas Criminal Code which provided for such a preliminary hearing was last codified as section 3881 of Pope's Digest of the Statutes of Arkansas which was published in 1937. However, in Forby v. Fulk, Judge, 1948, 214 Ark. 175, 214 S.W.2d 920, the Arkansas Supreme Court held that section 3881 had been repealed by implication by Initiated Act 3 of 1936, which has been mentioned, and that the same jury that passes on the question of the guilt or innocence of the defendant is also to pass on his competency to stand trial.

Act 3 of 1936 and Act 237 of 1955 provide that in certain circumstances a defendant is to be committed to the Arkansas State Hospital for Nervous Diseases for examination and evaluation by a presumably competent and objective

panel of psychiatrists which panel is to inquire into both the question of the defendant's sanity at the time of the commission of the offense and the question of his competency to stand trial; a written report of the examination and evaluation is to be prepared and filed with the Circuit Court in which the criminal charge is pending. Upon a trial of the case either the defendant or the State may introduce evidence. The report filed with the Court is not evidence and can be introduced in evidence only in connection with the testimony of at least one of the doctors who signed the report.

Act 3 and Act 237 have been construed frequently by the Supreme Court of Arkansas. The decisions include: Blanton v. State, 1970, 249 Ark. 181, 458 S.W.2d 373; Turner v. State, 1955, 224 Ark. 505, 275 S.W.2d 24; Forby v. Fulk, supra; Lambert v. State, 1948, 213 Ark. 567, 211 S.W.2d 431; Jones v. State, 1942, 204 Ark. 61, 161 S.W.2d 173.

Insofar as here pertinent, those cases establish that the question of competency to stand trial and the question of insanity at the time of the commission of the alleged offense are both questions of fact which must be decided by the jury, and that the same jury that decides the one is also to decide the other. Further, in Forby v. Fulk, supra, the Court used language which would characterize incompetency to stand trial as a "defense" just as insanity at the time of the commission of the offense is deemed to be a "defense" in Arkansas. Specifically, the Court said (214 Ark. at 181, 214 S.W.2d at 923):

> "Insanity at the time of trial, or when the crime was committed, may always be interposed as a defense at the time the defendant is being tried for the offense alleged. To deprive the defendant of this defense would be contrary to our constitutional provision . . . which makes juries triers of facts."

However, the Supreme Court of Arkansas has never had occasion to deal squarely with the question of the stage of the criminal trial at which the question of competency to stand trial is to be submitted to the trial jury or as to just how the question is to be submitted.

Moreover, while the Arkansas Supreme Court has recognized that there is a difference between a defendant's competency to stand trial and his insanity at time of the commission of the offense this Court is not sure that the Arkansas Court has fully recognized the degree of the difference. Unlike the question of insanity at the time of the commission of the offense, the question of mental competency to stand trial is jurisdictional and goes to the very power of the Court to put the defendant on trial. And regardless of the quoted language of the Court in Forby v. Fulk, supra, mental incompetency to stand trial is not a "defense." That was recognized by former Associate Justice Ed F. McFaddin in his concurring opinion in Turner v. State, supra, 224 Ark. at 522, 275 S.W.2d at 33. Justice McFaddin after referring to the *Forby* language went on to say: "But insanity at the time of the trial is not a defense to the crime. It is merely a right to have the trial for the crime postponed until the accused becomes sane. The fact that a man might be perfectly sane when he committed the offense, and be insane at the time of the trial, is no defense to the alleged crime. Present insanity is only a *ground for postponement of trial* for the alleged offense."

The distinction between insanity at the time of the offense and mental incompetency to stand trial was expressly recognized by the Court of Appeals for this Circuit in Hurt v. United States, supra, 327 F.2d at 981, wherein it was said that the latter question is *sui generis*. That case also points out that where a criminal case is being tried to a jury, the defense of insanity must be passed upon by the jury. And while a jury may pass upon the question of com-

petency to stand trial, a jury determination of that question is not constitutionally required; the question may be decided by the Judge as is the federal practice under 18 U.S.C.A. § 4244.

### III.

Returning to the facts of this case, it seems clear that counsel for petitioner thought that his client was entitled to a preliminary determination of his competency to stand trial, and counsel made his desire for such a determination known to the Circuit Court while at the same time indicating that he was not raising "the defense of insanity." It is equally clear that the Circuit Judge was of the view that defendant was not entitled to a preliminary determination of trial competency but that he was entitled to raise any question of mental competency or condition that he might care to raise in the course of the trial. And it is also evident that the Circuit Judge did not feel that he was under any obligation *sua sponte* to bring any question of competency to stand trial or insanity at the time of trial to the attention of the jury if counsel for the defendant did not see fit to do so.

Granting the state of the law of Arkansas in this area as it existed in 1971, and as it exists today for that matter, this Court certainly cannot say that the Circuit Court committed any error of Arkansas law in dealing with the question of petitioner's competency to stand trial.

That, however, does not dispose of the matter. In Brown v. Stephens, E.D. Ark., 1965, 246 F.Supp. 1009, 1013, this Court said:

"... (I)n a collateral attack (on a State court conviction) a failure on the part of the defendant to observe State procedural requirements does not bar consideration of a federal constitutional claim unless the failure amounted to a binding waiver of the federal right . . . ."

Here, there has been no effective or binding waiver of petitioner's claim that

he was mentally incompetent to stand trial. Aside from the fact that legally such a claim is not a subject of waiver, Pate v. Robinson, supra, the record here does not establish any intention or effort on the part of petitioner or his attorneys to waive the question. Counsel clearly raised the question at the outset of the proceedings, and evidently thought that he had made a proper record when the Circuit Judge refused to grant a preliminary hearing. Counsel probably made a mistake when he did not bring up the matter before the jury, but a mistake as to procedure is not a waiver. Nor is waiver established by the mere failure of the petitioner to appeal from his conviction. Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837. Moreover, in his applications for post-conviction relief addressed to the sentencing Court petitioner has consistently contended that he was not mentally competent to stand trial.

### IV.

The Court is faced, then, with the ultimate question of whether the Circuit Court was required, as a matter of federal constitutional law, to hold an *in limine* hearing as to petitioner's mental condition or to cause *sua sponte* that question to be submitted to the jury in the course of the trial when counsel failed to do so.

As indicated in Lee v. Alabama, 5 Cir., 1967, 386 F.2d 97, 107, it is obviously advantageous to a defendant to have an *in limine* hearing as to his competency to stand trial whether the hearing is before a judge or whether it is before a jury. However, as far as the Court knows, it has not been held to be constitutional error to submit to the trial jury the question of a defendant's competency to stand trial along with the question of his guilt or innocence. On the contrary, such a procedure has been held not to violate due process of law. United States ex rel. Smith v. Baldi, 3 Cir., 1951, 192 F.2d 540, aff'd 1953, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549; United States ex rel. Leon v. Banmiller,

E.D.Pa., 1959, 179 F.Supp. 390, 393 and cases cited in Footnote 3 of the opinion.

Accordingly, the Court concludes that the Circuit Court did not deprive petitioner of due process when it failed to give him a preliminary hearing as to his competency to stand trial.

On the other hand, the Court is impelled to the conclusion that notwithstanding the failure of petitioner's attorney to raise the question before the trial jury in the course of the trial, the Circuit Judge in the circumstances should have seen to it that the issue was developed and submitted to the jury. Had that been done, and had the presumption attending the 1954 adjudication of insanity been met by the live testimony of the State's psychiatrist who was available as a witness, there is probably little doubt as to what the outcome would have been.

The Circuit Court was aware that petitioner was claiming mental incompetency to stand trial, and the Circuit Court was also aware of the fact that petitioner had been adjudicated insane, and that the adjudication had never been dissolved. Thus, as things then stood, petitioner was presumably insane in February 1971, and this Court thinks that the Circuit Court fell into constitutional error when it ignored that presumption and simply left it up to counsel whether to raise before the jury any question of petitioner's mental condition.

### V.

There remains for consideration the question of the relief to be afforded to petitioner.

In Pate v. Robinson, supra, it was suggested that the case should be remanded to the State courts for a retrospective determination of Robinson's capacity to stand trial some six years before the Supreme Court's decision was rendered. That suggestion was rejected, and Robinson's conviction was vacated with leave to the State to try him again within a reasonable time and in that

connection to make a determination of his competency to stand trial on the second occasion. 383 U.S. at 387, 86 S.Ct. 836.

A reading of the language of the Court in *Pate* and of the language appearing in Dusky v. United States, supra, cited in *Pate* makes it clear that in both of those cases factors existed, including but not limited to time lapse, which prevented a reliable retrospective determination of trial competency. It seems to this Court that such factors may or may not exist in a given case, and that the problem should be handled on a case to case basis. Obviously, it is too much to say that there can never be a reliable retrospective determination of a person's mental condition or competency at a given time, and juries in passing upon the defense of insanity are inevitably making retrospective determinations as to whether defendants were sane or insane when they committed the acts charged against them.

The Court of Appeals for the Fifth Circuit has not read Pate v. Robinson as requiring a federal habeas corpus court automatically to void a State court conviction if it finds that there was no adequate State determination of petitioner's competency to stand trial. Rather, the view of the Fifth Circuit is that it is for the federal habeas corpus court to determine whether a reliable retrospective determination can be made, and, if so, to make it. If the habeas court finds that there can be no reliable determination or if it finds affirmatively that the petitioner was not competent to stand trial, then the State conviction must be set aside with leave to the State to retry petitioner within a reasonable time. Carroll v. Beto, 5 Cir., 1970, 421 F.2d 1065; Harris v. Wainwright, 5 Cir., 1968, 399 F.2d 142; Lee v. Alabama, supra.

In the instant case there has been no great lapse of time since petitioner's 1971 trial, and there is nothing in the record to indicate the existence of any other factors which would preclude a re-

liable retrospective determination of petitioner's capacity to stand trial in 1971.

The Court, therefore, is going to follow the Fifth Circuit's procedure but with one departure which the Court takes in the interest of comity between the State and federal courts. The departure is that the Court is going to give the Circuit Court an opportunity initially to make the determinations that have been mentioned and to certify them to this Court together with transcripts of whatever proceedings may be had in the Circuit Court. Those determinations are: (1) Whether a reliable finding can now be made with respect to petitioner's competency to stand trial in the Circuit Court of Cross County, Arkansas, in early February 1971; (2) If such a finding can be made, then was petitioner competent to stand trial during the period just mentioned? If the Circuit Court declines to consider the questions just posed, this Court will consider them without the aid of the views of the Circuit Court.

If the Circuit Court is willing to entertain those questions, it will simply be deciding a federal question of fact, and should apply federal standards including the federal requirement that the burden of proving the competency of the petitioner to stand trial is upon the State and must be discharged by the evidence beyond a reasonable doubt. In passing upon those questions the Circuit Court will not be bound by ordinary procedural requirements of Arkansas law, although, of course, it will be free to proceed insofar as possible in conformity with State procedural law. If the Circuit Court desires to empanel a jury to pass on the question of petitioner's competency, it may do so, but in present context is not required to do so. Hurt v. United States, supra, 327 F.2d at 981.

If the Circuit Court makes and certifies the determinations in question, this Court will consider the case further, and will ultimately decide whether petitioner's conviction should be set aside or whether the petition should be dismissed.