. BOTILLA E. SMITH *vs.* LIBRARY BOARD OF CITY OF MINNEAPOLIS.

'Argued May 14, 1894.   Affirmed July 5, 1894.

No. 8744.

**Powers of the Library Board of the city of Minneapolis.**

Under the provisions of its charter (Sp. Laws 1885, ch. 3), defendant board has the power to become an ordinary bailee as to such personal property as may be of a proper character for exhibition in its public museum; a coin collection, for instance.

**It is liable for gross negligence.**

At defendant's request, plaintiff, without .compensation, loaned to it, for exhibition in its museum, several cases of coins. The law required of defendant that it exercise ordinary care and prudence in caring for the same. And if a resolution was passed by defendant board, and brought to the notice and knowledge of plaintiff, that it would not be responsible for the safety of the coins in any manner, it would still be liable in case the same were stolen and lost by reason of its gross negligence.

**Other assignments of error.**

Several unimportant assignments of error considered and disposed of.

Appeal by defendant, the Library Board of the City of Minneapolis, from an order of the District Court of Hennepin County, *Thomas Canty,* J., made December 30, 1893, denying its motion for a new trial.

The plaintiff, Botilla E. Smith, owned a collection of rare coins and on April 6, 1890, delivered them in cases to defendant at its request for exhibition in its library on the corner of Tenth Street and Hennepin Avenue.   Defendant agreed to and did pay the premium for fire insurance on the collection, but was to pay nothing more. About nine o'clock of the evening of September 1, 1892, there was a fire on Eleventh Street in the vicinity of the library building and it attracted the attention of those having charge of the property in the library.   At about ten o'clock that night it was discovered that one of the cases containing coins had been taken from the frame and had disappeared.   It contained two hundred and eighty American silver coins, some of them rare and of early date.   The property was undoubtedly stolen and was never recovered.   This

action was to recover the value. Plaintiff had a verdict for $677.45. Defendant moved for a new trial. Being denied it appeals.

*David F. Simpson* and *William H. Morse,* for appellant.

*Rea, Hubachek & Healy,* for respondent.

COLLINS, J. For more than two years prior to September 1, 1892, plaintiff had been the owner of a large collection of coins, placed in cases for exhibition. During all of this time these cases of coins were in the possession of defendant, and by it were being exhibited to the public, with other articles of interest, at its building in the city of Minneapolis. There was some dispute between the parties as to the terms or conditions under which the coins were placed in defendant's custody, but it is evident that they were loaned by plaintiff at defendant's solicitation; that nothing was to be paid for their use; but that defendant was to and did pay the premium upon a fire insurance policy covering the same, and did furnish one case for a part thereof. One evening, about the date first mentioned, one of the cases, with its contents, was stolen from the building, and lost to plaintiff, whereupon she instituted this action to recover the value of the coins, alleging that they were stolen and lost because of defendant's gross negligence and carelessness.

1. On the trial of the case there was introduced in evidence (defendant objecting) a receipt of date April 6, 1891, signed by defendant's librarian, in which he acknowledged that the coins had been received for exhibition in the loan collection of the library, to be returned in good condition. The ruling of the trial court when receiving this receipt in evidence is assigned as error on two grounds—First, that it was not signed by defendant board, or by any of its duly authorized officers, nor did it purport to be signed by the librarian by virtue of any authority of the board or of its officers, nor was any attempt made to show that it was so signed; second, that in no event was defendant board authorized to incur a liability of the character found in the receipt, or to enter into a contract of the nature of that attempted thereby, which, briefly stated, was a contract of bailment. It was stoutly maintained on this second point that, under its charter, defendant board, was not empowered to become a bailee. While we feel satisfied that on the evidence, as it stood when the court overruled the defendant's objection to

the introduction of the receipt, there was nothing which warranted its reception, it is manifest that under the charge of the court no prejudice could have resulted to defendant from its introduction, provided it had authority, under its charter, to receive the coins as a loan from the owner; and this was in controversy, as before stated.

The defendant board derived its powers under Sp. Laws 1885, ch. 3. It was authorized to establish and maintain in the city of Minneapolis public libraries and reading rooms, galleries of art, and museums, for the use and benefit of the inhabitants of the city, and for this purpose had power to take, by "gift, grant, purchase, devise, bequest or otherwise any real or personal property." It had power to make and publish, from time to time, by-laws for its own guidance; rules and regulations for the government of its agents, servants, and employés, and "for the government and regulation of the libraries and other collections" under its control. It had other expressly enumerated powers, and finally, in addition to these, was granted "power and authority to undertake and perform every act necessary or proper to carry out the spirit and intent" of the act.

The defendant board was chartered for the purpose of establishing and maintaining public libraries and museums. While it was not expressly authorized to take property as a loan or deposit, or to incur the liability of an ordinary bailee, such express authority was not necessary. In addition to the powers expressly granted, it had those which are necessarily or fairly implied in or incident to the powers expressly granted, and those also essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable. That it could take personal property in some other way than by gift, grant, purchase, devise, or bequest is evident from the words "or otherwise," which are added to those mentioned It was also expressly empowered to undertake and perform every act necessary or proper to carry out the spirit and intent of the incorporating act. Coins of all descriptions are regarded as essential and indispensable to the establishment and maintenance of museums, and it is a well-known fact that in nearly every institution of this kind there are large and valuable collections owned by private individuals, and held by the exhibitors as loans or deposits. Frequently,

the most valuable works of art and the rarest collections of *curios* can only be obtained in this way. We have no doubt of the power of the board to take property of this character by express or implied contract, and to incur liability thereunder. In doing this it is undoubtedly acting within the scope of its powers, and carrying out the spirit and intent of the statute creating it.

2. It is admitted that defendant board desired that plaintiff place the coins in its custody for exhibition, and that the plaintiff was also desirous, for reasons of her own, that they be exhibited to the public, and that the latter be informed as to the ownership. With this mutually understood, they were handed over and put upon exhibition, defendant having entire control of them for the time being. At defendant's request, plaintiff loaned her property to it, and the law required of the former that it exercise ordinary care and prudence in caring for the same. If ordinary care and prudence were not exercised by the board in regard to the property, and it was stolen, then defendant board would be liable in damages, and the trial court so charged. But it was contended that some time after the coins came into defendant's possession, without any express understanding as to the latter's liability, a resolution was passed by the board, of which plaintiff was notified, that it would not be responsible for the safety of the coins, or for them, in any manner, except as to loss by fire. It did procure and pay for a fire insurance policy at this time. On the trial, plaintiff denied that she was informed of the resolution, and in view of the conflict in testimony the jury were instructed that, if they were of the opinion that plaintiff had knowledge of this resolution, she could not recover, unless they found that the coins were stolen and lost by reason of the gross negligence of the defendant. Of this feature of the charge the latter should not and does not complain. Evidently, under the charge of the court, as applied to the admitted fact, any error with respect to the admission of the receipt in evidence, and also as to what the librarian said to plaintiff and her husband relative to the responsibility of defendant board, worked no prejudice to it. The result was not affected by either the receipt or the statements.

We are of the opinion that plaintiff's husband was competent to testify as to the value of the coins. It was not necessary that he

should have bought and sold such articles up to the day of trial. See *Brackett* v. *Edgerton*, 14 Minn. 174 (Gil. 134); *Hoxie* v. *Empire Lumber Co.*, 41 Minn. 548, (43 N. W. 476;) 7 Am. & Eng. Enc. Law, 512.   But in any event the motion to strike out all of the testimony of the witness was properly denied, for much of his testimony related to matters other than values.

In view of the previous testimony of the janitor as to his knowledge of what transpired at the library building on the evening the coins were stolen, we think it was permissible to ask him as to his statements made next morning to plaintiff in reference to a fire in the vicinity of the building just before the coins were missed, and as to the attendants going to it, for the purpose of laying the foundation for impeachment.   This disposes of all of the assignments of error which we regard as entitled to discussion.

Order affirmed.

BUCK, J., absent, sick, and CANTY, J., who, as district judge, tried the case below, took no part.

(Opinion published 59 N. W. 979.)