Roosevelt WILSON and Johnny DANCY
*v.* STATE of Arkansas

CR 77-37                                          552 S.W. 2d 223

Opinion delivered June 20, 1977
(Division II)

822

*Harold L. Hall,* Public Defender, by: *Robert J. Govar,* Dep. Public Defender, for appellants.

*Bill Clinton,* Atty. Gen., by: *Joseph H. Purvis,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellants Roosevelt Wilson and Johnny Dancy were found guilty, in a joint trial, of burglary and theft of property, committed on February 25, 1976. They were charged with having broken into the Victory Liquor Store in North Little Rock and having taken a quantity of bottled liquor therefrom. They were charged with being habitual offenders, and each admitted two prior felony convictions. The charges were laid under Ark. Stat. Ann. §§ 41-2202 — 2203 (Crim. Code, 1976). We find no reversible error and affirm.

Appellants rely upon three points for reversal, which we will treat in the order argued.

I

The circuit judge gave the state's requested instruction No. 6 defining the crimes of burglary and theft of property. Appellants contend that we should reverse the judgments in

this case for plain error in the giving of the last sentence of that instruction, which was designed to inform the jury when theft or property constitutes a felony. It reads thus:

Theft of property is a felony if the value of the property is less than $100.00 but more than $10,000.00.

Appellant Wilson was represented by an attorney from the public defender's staff. Dancy was represented by retained counsel. Wilson's attorney made no objection to this instruction. Dancy's attorney made only a general objection, which is insufficient basis for appellate review. Rule 13, Uniform Rules for Circuit and Chancery Courts. Appellants contend that the instruction was incorrect, ambiguous and misleading and so prejudicial to their substantial rights that this court should notice the error and reverse the judgment in spite of the fact that proper objection was not made in the trial court.

Of course, the error is obvious. Ark. Stat. Ann. § 41-2203 (2) (b) states:

Theft of property is a Class C felony if: (i) the value of the property is less than $10,000 but more than $100.

Appellants say that prejudice is clear in this case, in which they were given maximum sentences of ten years for habitual offenders. Ark. Stat. Ann. § 41-1001 (1) (c) (Crim. Code, 1976). If the value of the property stolen is $100 or less, the offense is a Class A. misdemeanor, punishable by imprisonment for not exceeding one year and/or a fine not exceeding $1,000. Ark. Stat. Ann. §§ 41-901 (2) (a), 41-1101 (2)(a). A quantity of liquor having a value of $250 to $300 was recovered from the person to whom the evidence had showed appellants had sold it. The owner of the store burglarized was able to positively identify only five bottles of this liquor, which were valued at less than $100. Appellants say that the instruction as given assured the imposition of felony liability if the state convinced the jury beyond a reasonable doubt that anything was taken.

We do not agree that the error was prejudicial. It is quite

clear that the error was an inadvertent clerical misprision in the transposition of the figures $100 and $10,000 in the preparation\ of the instruction. This error was so obvious and misinterpretation was so highly unlikely that we cannot overlook the failure of appellants to make proper objections. See 75 Am. Jur. 2d 595, § 627. We will take this action only when the error is so great that the trial court was under a duty to correct it immediately and no objection or admonition could have undone the damage or erased the effect of the error from the minds of the jurors. See, e.g., *Bell* v. *State,* 223 Ark. 304, 265 S.W. 2d 709; *Wilson* v. *State,* 126 Ark. 354, 190 S.W. 441. Even that is a practice which should be indulged in with great caution and invoked only to avoid a clear miscarriage of justice. See *Minor* v. *United States,* 375 F. 2d 170 (8 Cir., 1967), cert. den. 389 U.S. 882, 88 S. Ct. 131, 19 L. Ed. 2d 177. *Craig* v. *United States,* 337 F. 2d 28 (8 Cir., 1964), cert. den. 380 U.S. 909, 85 S. Ct. 891, 13 L. Ed. 2d 796. The unlikelihood that the instruction could be misinterpreted actually finds support in the failure of appellants' attorneys to make a specific objection, which would have, beyond doubt, resulted in a prompt corrction of the ambiguous language. See *Rhodes* v. *State,* 208 Ark. 1043, 189 S.W. 2d 379. Appellants were called upon to call the court's attention to the erroneous language. *Lindsey* v. *State,* 151 Ark. 227, 235 S.W. 782; *Lockett* v. *State,* 136 Ark. 473, 207 S.W. 55. It is also significant that neither of appellants requested a misdemeanor instruction on theft. Furthermore, the evidence that the theft was felonious is quite substantial, if the jury found, as it must have, that the principal witnesses were not accomplices of appellants.

## II

Appellants contend that the trial court erred in denying their motions for mistrial after certain remarks were made by the prosecuting attorney during his opening statement to the jury. He said that the owner of the liquor store, Mrs. Leo Mabry, would say that she had been shot in a robbery and required to go to the hospital. When the motion for mistrial was made and denied, the prosecuting attorney advised the jury that the witness would say that neither of the appellants had anything to do with that robbery, but that the liquor store was boarded up at the time of the burglary because she was in the hospital.

When Mrs. Mabry testified, she remarked that she "had a couple of holdups." When the attorney for one of the appellants moved for a mistrial, the witness spontaneously stated, "They had nothing to do with it, these on trial." In denying this motion for mistrial, the trial judge directed the prosecuting attorney to get to the issue involved in the case, stating in effect that what had happened the preceding year might be a matter of concern at some other time or place, but not with the present facts. No admonition to the jury was requested by appellants in either instance.

We find no such prejudice to appellants as to call for the extreme and drastic step requested. A mistrial should not be declared unless the error is so prejudicial that justice cannot be served by a continuation of the trial. *Gammel & Spann v. State,* 259 Ark. 96, 531 S.W. 2d 474; *Hill v. State,* 255 Ark. 720, 502 S.W. 2d 649. Any prejudice arising from whatever error there was in these statements was minimized, if not completely neutralized, by the prompt disavowal by the prosecuting attorney and by Mrs. Mabry of any intent to imply that either of appellants had anything to do with the robbery of her injury. There is no indication that the state prompted the apparently spontaneous remark by Mrs. Mabry. The court's statement to the jury when it was made was, in effect, a sufficient admonition to the jury. See *Ragsdale v. State,* 132 Ark. 210, 200 S.W. 802.

### III

Appellants contend that the evidence was insufficient to support their conviction, because there was no evidence tending to connect them with the burglary and theft, other than that given by two persons who were accomplices. One of these was Patricia Manning, a 17-year-old girl, who testified: she was "going with" Dancy at the time of the burglary; she was picked up by Dancy at her school on the evening of the burglary; Wilson and one Brooks were in the automobile driven by Dancy; they rode around until about 12, when Dancy took Wilson to some place on Broadway and parked the vehicle; Wilson and Brooks left the car, taking a bag with them; Wilson pulled some tin loose from the building and Brooks entered it; Brooks handed the sack out of the building

to Wilson, who took bottles from it and put them in the trunk of Dancy's car; Wilson took the empty sack back to the building and returned it to Brooks, who partially filled it and returned it to Wilson who took it to the trunk of the automobile after which Brooks came out of the building and both Brooks and Wilson got back in the car; Wilson asked Dancy to take him to a Seven-Eleven store somewhere near Burns Park, where Wilson used a telephone; that a white man named Bobby came to the store and Wilson and Brooks took liquor from Dancy's car and put it in this man's car; when Wilson got back in the car he said nothing except that he got $160; they took Brooks home and were stopped on the street when the police came up and arrested her, Wilson and Dancy; she did not hear anyone say anything about a burglary before they went to the building, which she identified as the liquor store that was burglarized; Wilson said nothing about this white man or what he intended to do; she did not know what was going on when they drove to this building; the officers told her they would drop the charges against her if she would tell what she knew; and she went with two police sergeants and identified the "white dude's car."

Bobby Banks testified that he had become acquainted with Wilson at a pool hall in North Little Rock, where he had been shooting pool with people who went to Banks' deer camp, and learned that Wilson knew some of these people; that there was conversation about having drinks at the camp; that Wilson said that he had a cousin who had some alcohol that Banks could buy for the deer camp; that later Wilson brought some man he identified as the cousin to Banks' house; that Wilson said his cousin was selling out his stock of liquor, in a liquor store he had, because he was going out of business; that Banks agreed to buy what he needed for the deer camp during the winter; that two days later, in response to a phone call at around 11:30 p.m., he went to a Seven-Eleven store about a block from his house and agreed with Wilson on the price of $160 for some liquor in the trunk of a car; that there were four people in the automobile; that he knew Dancy; that Wilson, Dancy and a girl were among the four people, but that he did not know the other person, a man; that he paid Wilson $160; that he and Wilson and Dan-

cy loaded the liquor in his car; that there were many brands and various size bottles; that he had no knowledge that he was buying liquor that came from the Victory Liquor Store; that he had no agreement that Dancy, Wilson or anyone else to steal any liquor for him; that when he was arrested by the police the next morning, he cooperated with them, opened the trunk of his car for them, and drove the car to the police station and gave them permission to search his house; that he was charged with theft by receiving, was still charged, and had made no "deal" for his testimony, but hoped that his testifying would help him; that he bought the whiskey at night at a well-lighted place of business; that he thought the liquor was worth twice what he paid for it; and that he thought he was buying legitimate whiskey from a place that was going out of business.

The court gave instructions requested by appellants defining an accomplice and the necessity for corroborating testimony, together with a correct instruction on the subject which had been requested by the state. If the jury believed these witnesses, as it apparently did, they were not accomplices. An appropriate definition of accomplice was recently quoted from *Simon v. State,* 149 Ark. 609, 233 S.W. 917, in *Burke v. State,* 242 Ark. 368, 413 S.W. 2d 646, viz:

"The test, generally applied to determine whether or not one is an accomplice, is, could the person so charged be convicted as a principal, or an accessory before the fact, or an aider and abetter upon the evidence? If a judgment of conviction could be sustained, then the person may be said to be an accomplice; but, unless a judgment of conviction could be had, he is not an accomplice.

\*\*\*\*\*

"The term 'accomplice' cannot be used in a loose or popular sense so as to embrace one who has guilty knowledge, or is morally delinquent, or who was even an admitted participant in a related, but distinct offense. To constitute one an accomplice, he must take some part, perform some act, or owe some duty to the person

in danger that makes it incumbent on him to prevent the commission of the crime. Mere presence, acquiescence or silence, in the absence of a duty to act, is not enough, however reprehensible it may be, to constitute one an accomplice. The knowledge that a crime is being or is about to be committed cannot be said to constitute one an accomplice. Nor can the concealment of knowledge, or the mere failure to inform the officers of the law when one has learned of the commission of a crime."

Appellants contend that the testimony of Banks clearly showed that he was an accomplice and that he could have been convicted of theft by receiving stolen property under Ark. Stat. Ann. § 41-2206 (Crim. Code, 1976). He probably could have been. See *Long v. State,* 192 Ark. 1089, 97 S.W. 2d 67. But the testimony of Banks about his belief that he was the beneficiary of a bargain from a close-out sale, the circumstance of the transfer of the liquor to his vehicle in a brightly lighted location and his ready disclosures to police would have to be disregarded. The question of his status was properly submitted to the jury. The question whether a witness is an accomplice is usually a mixed question of law and fact and the findings of the jury are binding unless the evidence shows conclusively that he was an accomplice. *Burke v. State,* supra.

Appellants say that Miss Manning was an accomplice, as a matter of law, under the definition set out in Ark. Stat. Ann. § 41-303 (1) (c) (Crim. Code, 1976), claiming that she had a legal duty to prevent the commission of the offense and failed to make a proper effort to do so. It is true that she might have been found by the jury to be an accomplice, but her legal duty to prevent the offense is not defined by appellants, and we find little, if any, evidence to support that argument. The applicability of this portion of the section to this minor who had no official position and who was not an employee of, or otherwise connected with, the establishment burglarized is, to say the least, doubtful. It is not shown that she actively participated in the crimes charged and what she might have done to prevent them is not pointed out. Mere presence, or negative acquiescence and passive failure to disclose the crime are neither separately nor collectively suf-

ficient to make one an accomplice. *Johnson* v. *United States*, 195 F. 2d 673 (8 Cir., 1952); *Satterfield* v. *State*, 245 Ark. 337, 432 S.W. 2d 472.

The judgment is affirmed.

We agree. HARRIS, C.J., and BYRD and HICKMAN, JJ.