**Francis Edward KLIMAS, Appellant,**

v.

**James MABRY, Commissioner, Arkansas Department of Corrections, Appellee.**

No. 78–1663.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1979.

Decided May 30, 1979.

Rehearing and Rehearing En Banc Denied Aug. 13, 1979.

See 603 F.2d 158.

Richard F. Quiggle, Little Rock, Ark., for appellant.

Neal Kirkpatrick, Asst. Atty. Gen., Little Rock, Ark., for appellee; Bill Clinton, Atty. Gen., and James E. Smedley, Asst. Atty. Gen., Little Rock, Ark., on brief.

Before HEANEY and McMILLIAN, Circuit Judges, and SCHATZ,* District Judge.

HEANEY, Circuit Judge.

Francis Edward Klimas, an Arkansas state prisoner, appeals from the order of the District Court dismissing his petition for a writ of habeas corpus.[1] On appeal, Klimas contends that the writ should have been granted because his cross-examination of a key prosecution witness at his state trial was impermissibly restricted, and because records of seven Missouri convictions, which were silent as to Klimas's representation by counsel, were considered by the jury in the enhancement of his sentence under the Arkansas Habitual Criminal Act, Ark. Stat.Ann. § 43–2328. We reverse and remand.

Klimas was convicted of burglary and grand larceny, in violation of Ark.Stat.Ann. §§ 41–1003 and 41–3907 (repealed 1976), in Jefferson County Circuit Court on April 23, 1975.[2] After the verdicts of guilty were returned, the second part of the information, charging Klimas with being a habitual criminal under Ark.Stat.Ann. § 43–2328,[3]

---

* ALBERT G. SCHATZ, United States District Judge, for the District of Nebraska, sitting by designation.

1. Klimas's petition was brought under 28 U.S.C. § 2254.

2. Evidence introduced at Klimas's trial indicated that Klimas and an accomplice, Arlie Weeks, burglarized the Dixie Wood Preserving Company plant near Pine Bluff, Arkansas, and stole a check made out to the Potlatch Corporation, ten walkie-talkie radios and coins from two soft-drink dispensing machines. Weeks testified that the men obtained approximately $58.00 from the machines, which they split between them.

3. Ark.Stat.Ann. § 43–2328 provides:

Second or subsequent convictions—Sentence.—Any person convicted of an offense, which is punishable by imprisonment in the penitentiary, who shall subsequently be con-

was read to the jury. The prosecution then offered into evidence certified copies of records from the Department of Correction, Missouri State Penitentiary, which indicated that Klimas had been previously convicted of seven felonies in Missouri.[4] The defense objected to the introduction of this evidence on the ground that the records were silent as to whether Klimas had been represented by counsel. This objection was overruled. The prosecution also introduced certified copies of records from the Arkansas State Penitentiary, which indicated that Klimas had pled guilty to three burglary-grand larceny transactions, occurring on February 12, 21 and 26 of 1972, for which he received three concurrent, five-year sentences.[5] No objection to the introduction of this evidence was made.

Arguments on the habitual criminal charge were made to the jury by both the prosecution and the defense. The jury was then instructed and sent to deliberate with four verdict forms. The first form provided that if the jury found Klimas guilty of having been convicted of no prior felony offense, his punishment should be fixed at not less than one nor more than twenty-one years for grand larceny, and not less than two nor more than twenty-one years for burglary. The second form provided that if the jury found him guilty of having been convicted of one prior felony offense, his punishment should be fixed at not less than two nor more than twenty-one years for grand larceny, and not less than three nor more than twenty-one years for burglary. The third form provided that if he was found guilty of having been convicted of two prior felony offenses, his punishment for grand larceny should be fixed at not less than four nor more than twenty-one years for grand larceny, and not less than five nor more than twenty-one years for burglary. The fourth form provided that if he was found guilty of having been convicted of three prior felony offenses, his punishment should be fixed at not less than twenty-one nor more than thirty-one and one-half years for grand larceny, and the same for the

victed of another such offense, shall be punished as follows:

(1) If the second offense is such that, upon a first conviction, the offender could be punished by imprisonment for a term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one (1) year more than the minimum sentence provided by law for a first conviction of the offense for which the defendant is being tried, and not more than the maximum sentence provided by law for this offense, unless the maximum sentence is less than the minimum sentence plus one (1) year, in which case the longer term shall govern.

(2) If the third offense is such that, upon a first conviction, the offender could be punished by imprisonment for a term less than his natural life, then the person shall be sentenced to imprisonment for a determinate term not less than three (3) years more than the minimum sentence provided by law for a first conviction of the offense for which the defendant is being tried, and not more than the maximum sentence provided by law for the offense, unless the maximum sentence is less than the minimum sentence plus three (3) years, in which case the longer term shall govern.

(3) If the fourth or subsequent offense is such that, upon a first conviction, the offender could be punished by imprisonment for a term less than his natural life, then the per-

son shall be sentenced to imprisonment for the fourth or subsequent offense for a determinate term not less than the maximum sentence provided by law for a first conviction of the offense for which the defendant is being tried, and not more than one and one half (1½) times the maximum sentence provided by law for a first conviction; provided, that any person convicted of a fourth or subsequent offense shall be sentenced to imprisonment for not less than five (5) years.

4. These convictions, dating back to 1951, were as follows: grand larceny, sentence—two years, time served—one year; burglary and stealing, sentence—two consecutive two-year terms, time served—two and one-half years; three counts of stealing, sentence—three four-year concurrent terms, time served—more than two years; two counts of robbery, sentence— two concurrent eight-year terms, time served— four and one-half years.

5. The February 12, 1972, crime involved theft of two television sets, some clothing and a shotgun from a house after entering through an unlocked garage door. The February 21, 1972, crime involved the theft of cigarettes, an undisclosed amount of money and personal property from an open truck. The February 26, 1972, crime involved the theft of approximately $150.00 from a tavern's vending machines.

crime of burglary. The jury found that Klimas had been convicted of three prior felonies and fixed his sentence at thirty-one and one-half years for grand larceny, and thirty-one and one-half years for burglary. The trial judge ordered that Klimas serve these sentences consecutively.

Klimas appealed to the Arkansas Supreme Court, raising, among other grounds, the two grounds for reversal urged here. *Klimas v. State,* 259 Ark. 301, 534 S.W.2d 202 (1976), *cert. denied,* 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed.2d 117 (1976). The Arkansas Supreme Court held that since the records of Klimas's Missouri convictions were silent concerning his representation by counsel, they were inadmissible in the sentencing enhancement proceeding under *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). The Court reversed the judgment and remanded the case for a new trial unless the Arkansas Attorney General, within seventeen calendar days, accepted a reduction of Klimas's sentence to three years, the minimum sentence which he could have received for the burglary and grand larceny charges. 534 S.W.2d at 207. On rehearing, the Court modified its original order and imposed a sentence of forty-

two years, twenty-one years for each offense. The Court reasoned that since the six prior Arkansas convictions (three burglary-larceny transactions) were unchallenged by Klimas in the trial court, the minimum sentence which Klimas could have received would have been twenty-one years, making a total of forty-two years for the two offenses. The Court concluded that any possible prejudice to Klimas would be removed by reduction of his sentence to forty-two years. *Id.* Klimas's other grounds for the reversal of his conviction were rejected. The State subsequently agreed to this reduction, sentencing Klimas, in effect, to forty-two years imprisonment for the commission of four petty burglaries, three of which occurred within a fourteen-day period and for which he had previously served one five-year sentence.

Klimas then brought this habeas corpus action in federal District Court, raising the same issues which were raised in his state appeal and which he raises now. A hearing was held in the District Court on May 10, 1978. At that hearing, the District Court expressed concern that Klimas had received such a severe sentence for this series of petty crimes.[6] The court believed that it

---

**6.** The District Court stated:

THE COURT: I wish I could find some reason to give this petition consideration. It seems to me like its almost a tentative action taken by the state court on the charge of this nature—forty-two years under Arkansas law. But this Court has no right to disturb the decision of the state court.

\* \* \* \* \* \*

THE COURT: Well, I simply don't know if this Court can do anything about it on the charges you bring. The record on which you rely is that the state court sentenced you under the provisions of law. The Supreme Court of Arkansas heard—was in the process of remanding it for you to have a reduction to three years. What was the charge that you were being tried for here?

[MR. KLIMAS]: Burglary and larceny, your Honor.

THE COURT: Were all cases that you've been involved burglary and larceny?

[MR. KLIMAS]: Yes, sir.

THE COURT: And you just contend that the Court was in error in presenting it to the jury wherein you were convicted. Unless there's some showing of [a] constitutional right being violated, this Court just doesn't

have any jurisdiction over the matter. \* \*

Then you say that the Court was in error contrary to federal law in not reversing the original conviction, with orders to grant a new trial. Well, what you say here is the Supreme Court of Arkansas was wrong, when on a rehearing it modified its previous decision. And that certainly is not a constitutional question here.

I have a great deal of feeling about this because of the sentence. I know the state court probably was trying to carry out the state law and I would suspect that the Supreme Court had in mind that that was a terrible sentence to impose upon you, and it was looking for some reason to do something about it. \* \* \*

I wish I could suggest some action for you to take to try to do something about this rather severe sentence under Arkansas law. \* \*

\* \* \* \* \* \*

THE COURT: Well, I sure would make a pitch before the Parole Board, is about all I can suggest to you. I am sorry I can't do anything for you under the circumstances.

was without jurisdiction, however, both because Klimas's petition failed to sufficiently allege a violation of a constitutional right and because the United States Supreme Court denied certiorari in his appeal from the decision of the Arkansas Supreme Court. The District Court dismissed Klimas's petition for lack of jurisdiction, and he now appeals.

■ To the extent that the District Court believed that it was without jurisdiction to consider Klimas's petition because of the United States Supreme Court's denial of certiorari, it was in error. If, in exhausting state remedies, a state prisoner unsuccessfully seeks Supreme Court review, no weight is to be given to this denial when considering the prisoner's later petition for habeas corpus. *See* 28 U.S.C. § 2244(c); *Brown v. Allen*, 344 U.S. 443, 488–497, 73 S.Ct. 397, 97 L.Ed. 469 (1953); 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* ¶ 4264 at 631 (1978).

■ We, therefore, turn to the more difficult question presented by this petition: whether Klimas's pro se petition, liberally construed, sufficiently states the deprivation of a constitutional right which would justify the granting of federal habeas corpus relief.[7] *See* 28 U.S.C. § 2254; *Louis Serna v. Donald Wyrick*, 594 F.2d 869 (8th Cir., 1979); *DeBerry v. Wolff*, 513 F.2d 1336, 1338 (8th Cir. 1975).

■ We agree with the District Court that any error which the state trial court committed in restricting the cross-examination of Arlie Weeks, Klimas's accomplice and the prosecution's principal witness against him, did not rise to the level of the deprivation of a constitutional right. Klimas's counsel, in an apparent attempt to show that Weeks expected assistance from the prosecuting attorney in obtaining parole from his current incarceration in exchange for his testimony, asked Weeks whether he was aware that the recommendation of the prosecuting attorney is required before parole is granted in Arkansas. The prosecutor objected to the question; but before the court ruled on the objection, Weeks answered in the negative. The court then sustained the objection. Failure to allow effective cross-examination aimed at eliciting the bias of a prosecution witness can rise to the level of a constitutional violation. *See Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Although the objection here was probably erroneously sustained, since Weeks did answer the question prior to the court's ruling and since no further attempts were made by Klimas's counsel to elicit Weeks' possible bias, we cannot say that this error by the state trial court constituted a violation of Klimas's constitutional rights which would justify the granting of habeas corpus relief.

We find, however, that, under the particular facts of this case, the failure of the Arkansas Supreme Court to follow the sentencing procedure required by the Arkansas Habitual Criminal Act, Ark.Stat.Ann. § 41–

An order will be entered accordingly dismissing the petition for lack of jurisdiction. I hope you will find another reason that you can get some relief anyway.

[MR. KLIMAS]: Thank you, your Honor. Transcript of Proceedings before the Honorable Oren Harris, United States Senior District Judge, May 10, 1978, at 6–9.

7. The State conceded below that Klimas has exhausted his state remedies, and no claim to the contrary is made in the briefs before us. In any event, the federal rule that a state prisoner's state-court remedies must be exhausted before federal habeas corpus relief will lie is based on principles of comity, rather than the absence of federal power. *Cage v. Auger*, 514 F.2d 1231, 1232 (8th Cir. 1975); *Smith v. Wolff*,

506 F.2d 556 (8th Cir. 1974). Where it is clear that the state courts have had an opportunity to correct the constitutional error, there has been a sufficient vindication of the state's interests and the federal courts should proceed to entertain the § 2254 proceeding. *Cage v. Auger, supra* at 1232–1233. We are satisfied that the substance of Klimas's claims, concerning the restriction of the cross-examination of his accomplice and the imposition of his forty-two year sentence by the Arkansas Supreme Court, have been fairly considered by the Arkansas courts and that no purpose would be served by their presentation once again to the state courts. *See Wolfs v. Britton*, 509 F.2d 304, 308 (8th Cir. 1975).

1005 or § 43–2330.1,[8] in the resentencing of Klimas after the rehearing of his case resulted in a deprivation of due process which justifies the granting of habeas corpus relief.

Generally, the failure of a state court to comply with the provisions of state law in its criminal trials is purely a matter of local concern and is not reviewable by federal courts under the due process clause of the federal Constitution. *See Buchalter v. New York*, 319 U.S. 427, 429–430, 63 S.Ct. 1129, 87 L.Ed. 1492 (1943); *Cox v. Hutto*, 589 F.2d 394 at 395 (8th Cir., 1979). The failure of a state to afford a particular defendant the benefit of established procedures under state law may, however, result in a denial of due process when the error made by the state court renders the state proceedings so fundamentally unfair or so fundamentally deficient that they are inconsistent with the rudimentary demands of fair procedure. *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *Buchalter v. New York, supra*, 319 U.S. at 429–430, 63 S.Ct. 1129; *DeBerry v. Wolff, supra* at 1338; *Shirley v. State of N. C.*, 528 F.2d 819, 822 (4th Cir. 1975).

Under the Arkansas Habitual Criminal Act, an individual who is charged with being a habitual criminal[9] is tried for that offense after a verdict of guilty has been returned for the primary felony charge on which he has just been tried. Ark.Stat. Ann. §§ 41–1005, 43–2330.1. Evidence pertaining to the defendant's previous felony convictions is submitted to the jury and the defendant has the right to controvert such evidence or to submit other evidence in his support. *Id.* The jury must then retire;

and only upon its finding that the defendant has been convicted of prior felonies may a particular enhanced sentence be imposed. *Id.* Throughout this procedure, the State bears the burden of proving the prior convictions of the defendant, *McConahay v. State*, 257 Ark. 328, 516 S.W.2d 887, 889 (1974), and the weighing of the evidence and the ultimate factual finding that the defendant is a habitual criminal are for the jury alone. *Id.*

Where a state has provided, by statute, that a habitual criminal charge is to be tried to a jury, we do not believe that the state can abrogate that right in a particular case without violating the notions of fundamental fairness inherent in the due process clause. Where a right to trial by jury has been established under state law, the state cannot deny a particular accused that right without violating even the minimal standards of the due process clause. *See Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Berrier v. Egeler*, 583 F.2d 515, 522 (6th Cir. 1978); *Wolfs v. Britton*, 509 F.2d 304 (8th Cir. 1975); *Shirley v. State of N. C., supra; Braley v. Gladden*, 403 F.2d 858, 860–861 (9th Cir. 1968). While a habitual criminal proceeding is commonly thought of as a sentence-enhancement proceeding, rather than as a trial for a substantive offense, we believe that the highly penal nature of the Arkansas Habitual Criminal Act requires that the statutory requirements for conviction under that Act be strictly construed. *See Cox v. Hutto, supra; Parker v. State*, 258 Ark. 880, 529 S.W.2d 860, 863 (1975); *McConahay v. State, supra*, 516 S.W.2d at 889; *Higgens v.*

---

8. At the time of Klimas's trial on April 23, 1975, trial of habitual criminal charges was governed by Ark.Stat.Ann. § 43–2330.1. An extensive revision of the Arkansas Criminal Code was passed by the Arkansas legislature in 1975 and became effective on January 1, 1976. Under the new Criminal Code, the procedure for imposing an extended sentence on a person found to be a habitual offender is set forth in Ark.Stat.Ann. § 41–1005. This section is taken, almost verbatim, from the previous section. Although the new Criminal Code did not explicitly repeal § 43–2330.1, the "Compiler's Notes" following § 43–2330.1 state that "[t]his section,

or portions thereof, may have been impliedly repealed by the Criminal Code of 1976." *See* Notes by the Arkansas Statute Revision Commission, 4A Arkansas Statutes 1947 Annotated, at p. 316.

9. The definition of a habitual offender and the terms of imprisonment which may be imposed upon habitual offenders are found in Ark.Stat. Ann. § 41–1001 (effective January 1, 1976). The prior provision, which was in effect at the time of Klimas's trial, is found in Ark.Stat.Ann. § 43–2328.

*State*, 235 Ark. 153, 357 S.W.2d 499, 501 (1962).

After the Arkansas Supreme Court found that the evidence of Klimas's seven Missouri convictions were erroneously submitted to the jury, the Court did not remand his case for retrial on the habitual criminal charge. Instead, the court reimposed a sentence under the Habitual Criminal Act on the theory that the evidence of his prior Arkansas convictions, which was also submitted to the jury, could have supported the jury's finding that he had three prior convictions and, thus, was subject to the harshest penalty available under the habitual criminal law which was in effect at the time of Klimas's trial. It is impossible to tell from the jury's verdict, however, *which* three prior offenses were used by the jury to support its conviction on the habitual criminal charge. There is no way we can assume that the jury found Klimas to be guilty of having been convicted of the prior Arkansas offenses since any three of the Missouri convictions alone would have supported the findings of the jury and the sentence which is imposed.[10]

The State, citing *Rose v. Hodges*, 423 U.S. 19, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975), argues that since the Arkansas Supreme Court modified Klimas's sentence without affording him a redetermination by jury of the habitual criminal charge, we must assume that such an action was authorized by state law. We do not believe that *Rose* stands for so broad a proposition. In *Rose*, whether or not the sentences imposed upon respondents were subject to commutation by the Governor of Tennessee was a disputed question of state law, resolved in favor of commutation by the Tennessee courts. We do not believe that *Rose* stands for the

proposition that where rights under state law are clear, the denial of those rights to a particular accused by the state courts is insulated from federal habeas corpus review. As stated by the Ninth Circuit in *Braley v. Gladden, supra* :

> Emphasizing that the jury trial in this case arose solely from * * * the Oregon constitution, the appellee insists that the interpretation by Oregon courts as to that which is required by Oregon's constitution is firmly controlling. * * *
>
> Unquestionably, the state courts should have the primary responsibility for determining the application of the state constitutions; however, this principle does not diminish our responsibility to insure that state constitutional interpretations are consistent with the federal Constitution.

*Id.* at 860. *See also Ellingburg v. Lockhart*, 397 F.Supp. 771, 776 (E.D.Ark.1975).

The question which remains is whether the state court's failure to afford Klimas a redetermination of the habitual criminal charge by jury was, in any event, harmless error since Klimas did not challenge the existence of the Arkansas convictions at the state trial or on appeal.[11] The Arkansas Supreme Court held that since, in view of the unchallenged Arkansas convictions, the minimum sentence which Klimas could have received under § 43–2328(3) would have been twenty-one years on each charge, the reduction of his sentence from sixty-three years to forty-two years would remove any possible prejudice to him.

Retrial of a criminal defendant on a habitual criminal charge may be a futile gesture where evidence of convictions, which was properly submitted to the jury, is unchallenged by the defendant.

---

10. This case is, therefore, distinguished from those cases where all of the prior convictions submitted to the jury were necessary to support the jury's findings. *See, e. g., Wilburn v. State*, 253 Ark. 608, 487 S.W.2d 600 (1972) (evidence of two prior felony convictions submitted to the jury; defendant sentenced by the jury as a "third offender").

11. The fact that an accused does not submit evidence contradicting that submitted by the

prosecution does not, of course, eliminate the accused's right to a jury trial. Where a statutory right to trial by jury exists, that right must be honored, "regardless of the heinousness of the crime charged [or] the apparent guilt of the offender * * *." *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). *See also Braley v. Gladden*, 403 F.2d 858, 860–861 (9th Cir. 1968).

*See, e. g., Roach v. State,* 255 Ark. 773, 503 S.W.2d 467, 471 (1973).[12] In this case, however, Klimas's right to a retrial of the habitual offender charge is of importance since the provisions of the Arkansas Habitual Criminal Act were changed between the time of his state court trial and the time of the modification of his sentence by the Arkansas Supreme Court. Under Ark.Stat. Ann. § 43–2328(3), in effect at the time of his trial, Klimas's six Arkansas convictions (three burglary-larceny transactions) would, as the Arkansas Supreme Court indicated, require a sentence of at least twenty-one years on each of his current charges. Under the new provisions of the Habitual Criminal Act, Ark.Stat.Ann. § 41–1001 (effective January 1, 1976), each of the Arkansas burglary-larceny transactions, of which Klimas had previously been convicted, would be considered only as a single felony conviction, giving him a total of three prior felony convictions. With this record, under the new law, he would appear to be subject to a sentence of not less than five, nor more than thirty, years on each of his current charges.[13] Since neither the briefs filed by the parties nor our questions at oral argument resolved whether the old or new law would govern a retrial of the habitual criminal charge and the penalty to be assessed thereunder,[14] we cannot say, as a matter of

12. In *Cox v. Hutto,* 589 F.2d 394 (8th Cir., 1979), we held that the failure of the state trial judge to inquire into Cox's knowledge of and consent to a stipulation of his prior convictions, filed by his counsel in a habitual criminal proceeding, deprived him of his constitutional rights. We remanded the case to the District Court for a determination of whether Cox sustained any prejudice from the defective stipulation of prior convictions. Such prejudice would be presumed unless the state could establish that it possessed evidence at the time of trial establishing the three prior convictions necessary to support Cox's sentence. Cox's right to a redetermination by jury of his habitual criminal conviction was not raised in that case and, thus, we did not address that issue.

13. Ark.Stat.Ann. § 41–1001 states:

Sentence to imprisonment for felony—Extended term for habitual offender.—(1) A defendant who is convicted of a felony and who has previously been convicted of more than one (1) but less than four (4) felonies, or who has been found guilty of more than one (1) but less than four (4) felonies, may be sentenced to an extended term of imprisonment as follows:

(a) not less than ten (10) years nor more than fifty (50) years, or life, if the conviction is of a class A felony;

(b) not less than five (5) years nor more than thirty (30) years, if the conviction is of a class B felony;

(c) not less than three (3) years nor more than fifteen (15) years, if the conviction is of a class C felony;

(d) not exceeding seven (7) years, if the conviction is of a class D felony;

(e) upon conviction of an unclassified felony punishable by less than life imprisonment, not less than three (3) years more than the minimum sentence for the unclassified offense nor more than five (5) years more than the maximum sentence for the unclassified offense;

(f) upon conviction of an unclassified felony punishable by life imprisonment, not less than ten (10) years nor more than fifty (50) years, or life.

\*  \*  \*  \*  \*  \*

(3) For the purpose of determining whether a defendant has previously been convicted or found guilty of two [2] or more felonies, a conviction or finding of guilt of burglary and of the felony that was the object of the burglary shall be considered a single felony conviction or finding of guilt. A conviction or finding of guilt of an offense that was a felony under the law in effect prior to the effective date [January 1, 1976] of this Code shall be considered a previous felony conviction or finding of guilt.

Under the new Arkansas Criminal Code, burglary is a class B felony, and larceny is a class B or C felony. *See* Ark.Stat.Ann. §§ 41–2002, 41–2203.

Consideration of a burglary and the felony that was the object of the burglary as a single felony conviction for the purposes of the Habitual Criminal Act was instituted to prevent the precise situation which we find here:

Although prior to the Code's enactment most circuit judges treated convictions for burglary and grand larceny as a single prior conviction for purposes of habitual offender sentencing, a few apparently considered such a disposition to constitute two convictions. To achieve some parity of treatment in calculating the number of prior convictions, subsection (3) consolidates a burglary and the offense that was its object into a single felony conviction for habitual offender purposes.

Arkansas Statute Revision Commission, "Commentary," 4 Arkansas Statutes 1947 Annotated, at p. 123.

14. Section 41–102 of the Arkansas Criminal Code of 1975 provides:

Application of provisions.—(1) The provisions of this Code \* \* \* shall govern the

law, that the failure to afford Klimas a jury redetermination of this charge was in no way prejudicial to him.

The order dismissing Klimas's petition is vacated, and the case remanded to the District Court. Upon remand, the District Court shall hold the petition in abeyance in order to afford the State of Arkansas the opportunity to resentence Klimas by jury in accordance with Arkansas law. If the State fails to initiate a resentencing procedure in Arkansas state court within a reasonable time, the District Court shall grant the writ.

prosecution for any offense defined by this Code and committed after the effective date [January 1, 1976] hereof.

(2) Unless otherwise expressly provided, the provisions of this Code shall govern the prosecution for any offense defined by a statute not part of this Code and committed after the effective date hereof.

(3) The provisions of this Code do not apply to the prosecution for any offense committed prior to the effective date of this Code. Such an offense shall be construed and punished in accordance with the law existing at the time of the commission of the offense.

(4) A defendant in a criminal prosecution for an offense committed prior to the effective date of this Code may elect to have the construction and application of any defense to such prosecution governed by the provisions of this Code. * * *

(5) When all or part of a statute defining a criminal offense is amended or repealed, the statute or part thereof so amended or re-pealed shall remain in force for the purpose of authorizing the prosecution, conviction and punishment of a person committing an offense under the statute or part thereof prior to the effective date of the amending or repealing act.

It is unclear, under this section, whether a charge of habitual criminality is an "offense" and, if so, whether its "commission" in a case such as this would be at the time of the commission of the latest underlying felony (here, prior to the effective date of the Code) or at the time that an individual's status as a habitual criminal is determined (here, at the time of the retrial of the habitual criminal charge). It is also unclear whether the fact that burglary and the larceny which was its object are considered to be a single offense under the new provisions of the Habitual Criminal Act could be argued to the jury in a retrial of Klimas under the old law, as a mitigation of his record and the degree of habitual criminality which the jury might find.