Jimmy Dale PLY *v.* STATE of Arkansas

CR 80-65                                606 S.W. 2d 556
Supreme Court of Arkansas
Opinion delivered October 6, 1980
Rehearing denied November 24, 1980

556

E. *Alvin Schay*, State Appellate Defender, by: *Deborah Davies Cross*, Deputy Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Victra L. Fewell*, Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Chief Justice. Jimmy Dale Ply, the appellant, was charged on June 11, 1979, with two counts of theft of property under Ark. Stat. Ann. § 41-2203 (Supp. 1979). By an amended information he was charged under the Habitual Offender Act [Ark. Stat. Ann. § 41-1001 et seq (Repl. 1977)]. He was found guilty and sentenced on one count of theft of property. The jury found him guilty of having been convicted of four or more felonies, and fixed his punishment at 15 years in the Department of Correction. Sentence was pronounced according to the verdict. He relies on the following points for reversal.

I

THE TRIAL COURT ERRED IN DENYING APPELLANT HIS STATUTORY RIGHT TO A JURY TRIAL ON THE HABITUAL CRIMINAL CHARGE.

II

THE TRIAL COURT ERRED IN CONSIDERING DEFECTIVE EVIDENCE OF PRIOR CONVICTIONS OF APPELLANT IN THE HABITUAL CRIMINAL PROCEEDING FOR PURPOSES OF SENTENCE ENHANCEMENT.

III

THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT OF ACQUITTAL FOR APPELLANT FOR INSUBSTANTIAL PROOF OF A VALUE OF THE ALLEGED STOLEN PROPERTY.

We find no reversible error and affirm.

I

At the sentencing phase of a bifurcated trial, the state presented evidence of appellant's prior convictions. The trial judge gave the following instruction to the jury:

THE COURT: Ladies and gentlemen of the jury, I will submit to you for your consideration, one verdict. As has been indicated by counsel, you will be assessing punishment under this verdict. I will read to you now the verdict form, "We, the jury, find the defendant, Jimmy Dale Ply has been previously convicted or found guilty of four or more felonies and fix his punishment on the finding of guilt for the crime of Theft of Property as follows: (1) A sentence of 10 to 20 years imprisonment in the Arkansas Department of Correction, OR (2) A fine of not to exceed $10,000 OR (3) Both a sentence of

10 to 20 years imprisonment in the Arkansas Department of Correction, and a fine not to exceed $10,000.00. In assessing the punishment, if it is your decision that the defendant in this case should be sentenced to a term of imprisonment, you will fill in the blank provided by the verdict form with the appropriate number of years imprisonment; likewise if you should decide that a fine should be assessed in this case, there is a blank provided for a fine, up to $10,000.00, and you will fill in the appropriate sum. On the third alternative on the verdict form is both a sentence and a fine. Once again, a blank is provided, and you will fill in the blank as to the appropriate amount of fine, if that is your judgment. You will select either one, two or three. The verdict will be signed by the foreman.

The trial judge then asked counsel, "Is there anything else gentlemen before the jury retires?" Both the deputy prosecuting attorney and Ply's attorney answered in the negative. The verdict form was in accordance with the instruction. The jury returned the following verdict:

## VERDICT

We, the jury find the defendant Jimmy Dale Ply has previously been convicted or found guilty of _____ felonies, and we fix his punishment on the find-
(4 or more)
ing of guilt for the crime of Theft of Property, as follows:

(1) A sentence of Fifteen years imprisonment in the Arkansas Department of Correction,

OR

(2) A fine of _____ Dollars,
(not to exceed $10,000.00)

OR

(3) Both a sentence of _____
(10 years to 20 years)

years imprisonment in the Arkansas Department of

of Correction and a fine of _____
Dollars                                        ($10,000.00)

                                    Kenneth Dearmore
                                    Foreman

After the verdict was returned into open court, the trial judge asked the jury if it was the verdict of each of them. After the foreman answered that it was, the judge asked if either side wished to poll the jury. Both attorneys answered in the negative. Before pronouncing sentence, the judge asked Ply if he had anything to say before sentencing and received a negative response. The judge then pronounced sentence according to the verdict.

No objection was made to the court's instruction, the form of verdict, the verdict, the sentence or the pronouncement of sentence pursuant to the verdict. Appellant did not submit or request an instruction as to the verdict or the form of Verdict and did not request a particular form or ask that either the court's instruction or proposed verdict form be changed, as he should have done under these circumstances. See *Rowland* v. *State*, 263 Ark. 77, 562 S.W. 2d 590.

Appellant argues here that the trial court made a finding for the jury by instructing them to find appellant guilty of four or more felonies and to fix his punishment based on that finding, and thereby denied him a trial by jury on the issue of his status as a habitual offender, as required by Ark. Stat. Ann. § 41-1005 (2) and (3). Appellant argues that, in effect, the trial judge directed a verdict that appellant had at least four prior felony convictions. Appellant raised the question he now asserts for the first time on appeal, so we will not consider it. One who does not object to an instruction, stating distinctly the matter to which be objects and the ground for his objection, cannot raise an issue as to its correctness on appeal. *Cassidy* v. *State*, 254 Ark. 814, 496 S.W. 2d 376; *Randle* v. *State*, 245 Ark. 653, 434 S.W. 2d 294.

Appellant argues that because the verdict form submitted and the instruction given were not in compliance with the statute, there is a presumption of prejudice, citing

*Williams* v. *State*, 264 Ark. 77, 568 S.W. 2d 30. Apparently, appellant feels that there was no necessity for him to object in this case. We do not agree. In *Williams*, there was no chance for appellant to object to omissions of the jury foreman and of the bailiff during the jury's deliberation or even to know about them. Here, appellant had ample opportunity to object both to the instruction given and to the verdict form. We pointed out in *Goodwin* v. *State*, 263 Ark. 856, 568 S.W. 2d 3, that a defendant could raise an objection to the verdict form at the time the verdict is rendered, at the time of sentencing or by motion for new trial. We made it quite clear in *Gooodwin* that we would not thereafter consider an assertion of error in a verdict form that had not been raised in the trial court, in some manner, without adequate reason for the failure being shown.

Appellant argues that the court's action here constitutes plain error which is to be noticed even though not "assigned." This statement seems to be an assertion that this court should conduct a search for error. That concept is erroneous. Even in capital cases, where we must review all errors prejudicial to the rights of an appellant, we do not consider a possible error unless an objection has been made in the trial court. *Hulsey* v. *State*, 261 Ark. 449, 549 S.W. 2d 73; *Neal* v. *State*, 259 Ark. 27, 531 S.W. 2d 17, reh. den. 429 U.S. 966, 97 S. Ct. 397, 50 L. Ed. 2d 335 (1976). In the latter case, this rule was applied in treating an argument that the trial judge had, by an instruction, usurped the prerogative of the jury. It is true that we will consider the question of sufficiency of the evidence to support a verdict, in criminal cases, without any question having been raised in the trial court. We will do that in this case, when we reach appellant's point II. But we have no plain error rule. We only consider a trial court's action on appellate review without an objection having been made in the trial court when the error is so great that the trial court was under a duty to correct it immediately and no objection of admonition could have undone the damage or erased the effect of the error from the minds of the jurors. *Wilson* v. *State*, 261 Ark. 820, 552 S.W. 2d 223. In this case, the error could have easily been corrected, upon a timely objection, without the jurors ever having been aware of it.

In advancing his arguments on this point, appellant puts considerable reliance upon *Klimas* v. *Mabry*, 559 F. 2d 842 (8 Cir.), reh. den. 603 F. 2d 158 (1979), 3 judges dissenting. We do not see how that case is applicable here, even if it were authoritative rather than persuasive. We may well have some disagreement with the opinion of the Eighth Circuit Court of Appeals as may be readily seen from *Klimas* v. *State*, 259 Ark. 301, 534 S.W. 2d 202, cert. den. 429 U.S. 846, 97 S. Ct. 128, 50 L. Ed. 2d 117 (1976). Furthermore, the decision of the Eighth Circuit is far from final. It was reversed in *Mabry* v. *Klimas*, _____ U.S. _____, 100 S. Ct. 2755, 65 L. Ed. 2d 897 (1980). By order filed August 29, 1980, the Court of Appeals has vacated its original opinion and remanded the case to the District Court for the Eastern District of Arkansas with directions to dismiss the petition for habeas corpus by Klimas to give the State of Arkansas "the initial opportunity to pass upon and correct alleged violations of federal rights."

Appellant also cites *Cox* v. *Hutto*, 589 F. 2d 394 (8 Cir.), 619 F. 2d 731 (1980). We have not accepted those decisions as authoritative, particularly in view of the reliance placed upon *Klimas* v. *Mabry*, supra, on the second appeal.

## II

Appellant does not challenge the evidence of two prior convictions, one for burglary and another for aiding and abetting grand larceny. He does assert that the state failed to meet its burden of proving the other four. Three of these alleged convictions were recited in a single judgment against Ply and one Jackie Loftis on plea of guilty. This judgment was introduced into evidence. The other was for breaking and entering and for theft, evidenced by judgment entered in case No. CR 76-8 on September 16, 1976.

Appellant contends that the evidence of these convictions was improperly admitted because the judgments do not reflect that he was represented by counsel. This argument is based upon the caption in the first judgment, which indicated that the defendants were Jimmy Dale Ply and Jackie Loftis. The caption also included the following in the space provided for the case number:

| | |
|---|---|
| 1778 — Grand Larceny | 1781 — Grand Larceny |
| 1779 — Burglary | 1782 — Burglary |
| 1780 — Grand Larceny | 1783 — Grand Larceny |

Six copies of the judgment were filed, each one bearing the certificate of the Clerk of the Circuit Court of Marion County verifying that it was the judgment in one of the above cases. Accompanying each such certified copy of the judgment, with one exception, was an information charging a different crime or combination of crimes. Each information bore a certificate of the clerk, identifying it by case number, so that each copy of the judgment followed a copy of an information identifying the case number as the same as that shown in the certificate to the judgment following it, with the exception of No. 1781, for which no judgment is separately certified.

Appellant made no objection to the judgment in case No. 1778, but objected to the others on the ground that they showed no record on a judgment or of counsel. Appellant makes some arguments here that cannot, by any stretch of the imagination, be taken to come within the scope of the objection made.

Although the allegedly "combined" judgment in question names both Ply and Loftis as defendants, the judgment recites that *the defendant* appeared in person and by his attorney, James Johnson, that *the defendant* entered a plea of guilty to the charge of "Grand Larceny 1778, 1780, 1781, 1783; Burglary 1779, 1782" as charged by *"the information filed herein"* [Emphasis ours.] and that upon *"the defendant's* plea of guilty he should be adjudged guilty of the crime of Burglary and Grand Larceny." [Emphasis ours.] The punishment of *the defendant* was fixed at confinement in the Department of Correction for three years "on each charge, said sentences to run concurrently with each other." Nowhere in the body of the judgment does it appear that Ply was *the defendant* named. Reference to the judgment in case No. 1777, which appellant does not question, supplies this deficiency. Bobby Paxton and Jimmy Dale Ply were named as codefendants in that judgment. It contains the following recital: "This sentence of each of the defendants to run concurrent with their sentences in 1784, 1778, 1779, 1780, 1781, 1782, 1783." Unquestionably,

this shows that the "combined" judgment was against appellant. The record showed that Bobby Paxton was a defendant in case No. 1784, but that Ply was not. The judgment in No. 1784 recited that it was to run concurrently with Bobby Paxton's sentence in No. 1777.

We must agree with appellant that there is not an adequate showing of a judgment of conviction in case No. 1781. Otherwise, there was sufficient evidence to justify a finding that appellant has been found guilty of either burglary or grand larceny in cases Nos. 1778, 1779, 1780, 1782, and 1783. Under our present statute a previous conviction or finding of guilt of a felony may be proved by any evidence that satisfies the trier of fact beyond a reasonable doubt that the defendant was convicted or found guilty. Ark. Stat. Ann. § 41-1003 (Repl. 1977). The state concedes, however, that Nos. 1778 and 1779 amount to only one prior conviction under Ark. Stat. Ann. § 41-1001 (3) (Repl. 1977).

Appellant also argues that neither of these judgments adequately shows that he was represented by counsel. The "combined" judgment shows that "the defendant . . . . . appears by his attorney James Johnson." This was certainly sufficient evidence of representation by counsel in the absence of some showing to the contrary. See *Fike* v. *State*, 255 Ark. 956, 504 S.W. 2d 363. Appellant also contends that the judgment showing a prior conviction of breaking and entering and theft on September 16, 1976, failed to show that he was represented by counsel, because the caption lists appellant and two others as defendants, while the judgment recites that "the defendant appears in person and by their attorney, Joe Villines, Jr. and Gordon Webb." This is certainly a prima facie showing that three defendants were represented by two attorneys. If this were not so, appellant could easily have shown that it was not.

Appellant did not question two prior convictions. There was sufficient evidence of a conviction on September 16, 1976. The evidence with reference to the combined judgment was sufficient basis for finding at least three additional convictions.

## III

Appellant points out that theft of property is a felony only if the value of the property stolen is more than $100. Ark. Stat. Ann. § 41-2203(2)(b) (i) (Supp. 1979). The property involved here was a coin collection belonging to Jack Glass. The only testimony as to the value of the collection was that of Glass. Glass said that the collection consisted of seven or eight hundred coins, which he had started collecting during the time he was in the navy — 1956 to 1960. He said that he was a knowledgeable novice but not a professional collector and that he subscribed to magazines and had been reading on the subject of coins for 20 years. He stated that he had spent "many, many hours" in coin shops and at coin shows in Michigan. He said that he had bought some of the coins at coin stores and coins shows in folders describing them and showing their prices.

Glass "approximated" the total value at $750. Soon after the theft he had made a list of the missing coins for the police and for an insurance claim and had fixed the value from old receipts, retained coin holders and cancelled checks and by looking through books, magazines and digests. This list was admitted into evidence without objection. According to Glass, at least 17 of the coins were silver dollars. Eight were Eisenhower dollars. The state offered a newspaper ad by a coin dealer as an exhibit to Glass' testimony. It was received without any objection. According to that ad, a minimum of $9 would be paid for any silver dollar, regardless of its condition. Glass stated that he had paid $19.50 for a 1921 Peace dollar. He said that the face value of the American coins on page one of his list was $31.58, but using prices quoted in the newspaper ad, the minimum value of these coins would be $167. Included were a 1943 steel penny, eight Mercury dimes dated around 1920, some Liberty Head quarters dated about 1900, and a large United States penny dated around 1846. Glass said that the dimes could bring from 65 cents to $85 each, depending upon the condition of the coin. The list Glass made included eight Kennedy half-dollars and nine half-dollars minted before 1964, for which the newspaper ad quoted a price of $4.25 each. He said the face value of American coins that were still missing was $40. Glass also

enumerated several foreign coins he had bought from coin dealers. The total of the prices he said he had paid for them was $76.75.

This testimony by the owner was sufficient to establish a value of more than $100 for the coins taken from Glass. See *Bailey* v. *State*, 266 Ark. 260, 583 S.W. 2d 62. Glass was the owner and had some familiarity with values. It was not necessary that Glass should have bought and sold coins up to the day of trial in order to be competent to testify. *Smith* v. *Library Board*, 58 Minn. 108, 59 N.W. 979 (1894).

It is true that a great deal of hearsay was introduced through Glass such as, a newspaper advertisement by a dealer in coins. In fact, his own testimony was based to a considerable extent upon hearsay. For example, he had referred to coin folders showing prices and to coin catalogues and books in arriving at values. We have held that on direct examination, a witness expressing an opinion as to value should not be allowed on direct examination to repeat hearsay statements or to testify about other matters inadmissible under the rules of evidence. *Arkansas State Highway Com'n.* v. *Russell*, 240 Ark. 21, 398 S.W. 2d 201; *Arkansas State Highway Com'n.* v. *Sargent*, 241 Ark. 783, 410 S.W. 2d 381. Even so, we stated in *Russell* that an owner testifying as to value, might rely, wholly or in part, upon hearsay. Even if we assumed that the evidence adduced here as to value was entirely hearsay, it was admitted without objection. Hearsay, admitted without objection, may properly be considered. *Arkansas State Highway Com'n.* v. *Bradford*, 252 Ark. 1037, 482 S.W. 2d 107; *Brown* v. *Windland*, 249 Ark. 6, 457 S.W. 2d 840; 2 Wharton's Criminal Evidence 22, § 273. See also, *Spear* v. *State*, 184 Ark. 1047, 44 S.W. 2d 663. For this reason, if for no other, we are unable to agree with appellant that the testimony of Glass was not substantial evidence of a value of more than $100. See *Boone* v. *State*, 264 Ark. 169, 568 S.W. 2d 229.

The judgment is affirmed.

MAYS, J., dissents.

RICHARD L. MAYS, Justice, dissenting. Because of a lack

of an objection by appellant's attorney in the court below, the majority fails to reach the issue of whether the trial court denied appellant his statutory right to a jury trial on the habitual criminal charge. In justification, the majority basically asserts that this court should only consider an alleged error in the trial court without an objection when the damage from the error could not have been undone even had an objection been made. I would hold that some errors are so alien to certain basic concepts of fair play and render the trial procedure so fundamentally deficient that they must be reached whether or not an objection has been raised at the trial court level. See *Klimas* v. *Mabry*, 599 F. 2d 842 (8th Cir. 1979), *reversed on other grounds*, ___ U.S. ___, 100 S. Ct. 2755, 65 L. E. 2d 897 (1980). I view the denial of a right to a jury trial which has been statutorily preserved to be such an error.

Under our state law, the same jury which determines the guilt of an accused must determine his status as an habitual offender before imposing punishment. See Ark. Stat. Ann. § 41-1005 (Repl. 1977). The defendant has a statutory right to be judged by a jury of his peers. This right is not of recent origin but is indigenous to our judicial heritage. Such an important right should not be usurped by an unwary judge or lost because of an absent-minded attorney. It should be preserved by a vigilant judicial structure cognizant of the significance of the jury trial right to the integrity of our system of justice.

In addition to ignoring the abrogation of the jury trial right on the issue of appellant's habitual criminal status, the majority strains to find sufficient evidence to support a finding that appellant had four or more prior felony convictions. Irrespective of the majority's effort, however, the state's proof concerning appellant's prior felony convictions remains a confusing mixture of indecipherable judgments, duplications of judgments, and informations. The state not only has the burden of proving the requisite prior felony convictions but that a defendant was represented by counsel at the time of the convictions. *McConahay* v. *State*, 257 Ark. 328, 516 S.W. 2d 887 (1974). That burden was most definitely not satisfied in this case. If "burden of proof" means anything, it means that no court should be required to probe uncommonly rare in-

tellectual depths to extract a quantum of less than convincing evidence from a bedrock of ambiguities to justify sustaining a conviction.

I would reverse the judgment below.